GEORGE P. BRAUN *et al.*

*v.*

THE CITY OF CHICAGO.*

*Filed at Ottawa May 19, 1884.*

1. LICENSES—*as to the kinds of occupations upon which license fees may be imposed—generally.* The legislature, in authorizing the imposition of license fees, is not restricted to trades, occupations or classes of business

---

* The case of *Lyman* v. *City of Chicago*, and this case, were considered together.

which are immoral, vexatious or injurious to the well being of society. Nor is it necessary that before a business can be regulated or burdens imposed on its exercise, there should be power to suppress the business.

2. SAME—*whether brokers may be required to procure a license, and to pay a license fee—constitutional power of the legislature in that regard.* The legislature is fully authorized by the constitution to confer power, by general law, upon incorporated cities to demand and collect a license fee or tax of all persons who shall pursue the business or calling of brokers within their limits, and to prohibit within such limits the business of a money-changer, or banker, broker or commission merchant, including that of merchandise, produce or grain broker, real estate broker, and insurance broker, without license therefor; and such a provision in the charter of a city, and an ordinance in pursuance thereof, are not in conflict with any constitutional provision.

3. LICENSE FEE—*though not a tax, considered under the rule of uniformity as applied to a tax.* A license fee imposed by a city or village, in pursuance of power conferred by the legislature for that purpose, upon certain avocations, trades, business or occupations, carried on within the corporate limits, is not a tax, in the constitutional sense of that term.

4. But even regarding such a license fee as a tax upon persons, when imposed upon persons engaged in a given business, as, that of a broker, whether a produce or grain broker, real estate broker or insurance broker, it is not in violation of any constitutional provision when such fees are uniform as to all persons of the same class within the limits of the city.

5. MUNICIPAL TAXATION—*constitutional limitation—its extent—rule of uniformity, and the mode of its enforcement.* There is no limitation on the legislative power to invest cities and villages with authority to tax for corporate purposes, except that the taxes imposed shall be uniform as to persons and property within the corporate limits. An act giving power to levy or impose such taxes, which in terms neither requires uniformity nor dispenses with it, is not invalid. If the ordinance under such a power conforms to the constitutional requirement of uniformity, that will be sufficient.

6. The power of the legislature in providing for the imposition and collection of taxes, including the subject of taxation, the extent of the taxes and the mode of collection may be regarded as plenary, except so far as limited by the constitution.

7. SAME—*of the respective constitutional provisions concerning State and county revenue, and taxation for corporate purposes.* Municipal taxes are regulated and controlled by sections 9 and 10, of article 9, of the constitution, the preceding sections of that article relating to State and county revenue, and not to taxation by cities, towns and villages.

8. Section 9, of article 9, of the constitution, provides that the legislature may authorize the corporate authorities of cities, towns, etc., to levy taxes for corporate purposes; but the power of the legislature and the corporate body

is limited to uniformity as to persons and property within the corporate limits. Section 10 is a limitation on the power of the legislature to impose taxes on municipal corporations, or the persons or property thereof, for corporate purposes.

9. BROKER—*what constitutes a broker.* A broker is one who is engaged for others in negotiating contracts relative to property with the custody of which he has no concern. One who negotiates sales of grain or produce of others, without having its possession, is a produce or grain broker; and one who negotiates for the sale of lands of others is a real estate broker.

APPEALS from the Appellate Court for the First District;— heard in that court on appeals from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. LYMAN TRUMBULL, for the appellants:

Factors and brokers are both agents, but with this difference: the factor is intrusted with the property, while the broker is only employed to make a bargain in relation to it. 1 Parsons on Contracts, 91–99.

The fact that the ordinance defines a produce broker as one who, for commission, is engaged in selling produce belonging to others, does not make him such.

The requirement of a license fee of $25 from commission merchants and real estate agents can not be sustained as a tax upon such occupations, for the reason that the ordinance does not provide for its assessment and collection in the manner required by the statute. *Town of Lebanon* v. *Ohio and Mississippi Ry. Co.* 77 Ill. 541.

The exercise of the power to tax auctioneers, distillers, brokers, etc., is inconsistent with the act in force July 1, 1879, which provides that the aggregate amount of taxes levied by any city shall not exceed the rate of two per cent upon the aggregate valuation of all property within such city subject to taxation therein.

The ordinance can not be sustained as a tax, and is void as a police regulation. The business carried on by the ap-

pellants is such as any person has the right to engage in, and which the State has no right to prohibit.

Every burden imposed with a view to revenue, is levied under the power of taxation, no matter under what name proposed. License fees, when imposed for revenue, are taxes. Cooley's Const. Lim. (4th ed.) 619.

In all the cases where a license fee has been exacted, they were such as the municipality had the right to prohibit or deny. This court has never decided that a license fee may be required for the transaction of a business that may not be prohibited. *Farwell* v. *Chicago,* 71 Ill. 270; *Joyce* v. *East St. Louis,* 77 id. 156; *Barling* v. *West,* 29 Wis. 315.

Mr. F. S. WINSTON, Jr., and Mr. JULIUS S. GRINNELL, for the appellee:

A license is not a tax, in the sense in which that term is used in the constitution and statutes. *People* v. *Thurber,* 13 Ill. 554; *Firemen's Association* v. *Lounsbury,* 21 id. 511; *Insurance Co.* v. *Peoria,* 29 id. 180; *City of East St. Louis* v. *Wehrung,* 46 id. 392; *Ducat* v. *City of Chicago,* 48 id. 172; *Chicago Packing Co.* v. *Chicago,* 88 id. 221; *Walker* v. *City of Springfield,* 94 id. 364; *Lovingston* v. *Board of Trustees,* 99 id. 564; *East St. Louis* v. *Trustees of Schools,* 102 id. 489; *Wiggins Ferry Co.* v. *East St. Louis,* id. 560; *Cole* v. *Hall,* 103 id. 30; *Howland* v. *City of Chicago,* 108 id. 496; *Timm* v. *Harrison, Mayor,* 109 id. 593.

There is no constitutional limitation upon the power of the legislature to say what shall, or shall not, be a subject of license or regulation. The legislature has gone so far as to enact certain penal codes applicable to commission merchants, and to certain other classes of brokers. Crim. Code, secs. 75, 78.

A real estate agent is a broker. Webster's Dict.; Bouvier's Law Dict.; Story on Agency, secs. 28, 32, 32 a; *Saladin* v. *Mitchell,* 45 Ill. 79.

Mr. JUSTICE WALKER delivered the opinion of the Court:

These cases were commenced and tried separately, before the justice of the peace and in the circuit court of Cook county; but inasmuch as the same questions are presented in both cases, they have been argued and submitted as one in this court. We shall therefore consider them together.

In the circuit court it was stipulated that Braun was engaged in selling, in the city, produce, such as butter and eggs, belonging to other persons, when sent to him for that purpose; that he sold to such persons as would buy; that he also negotiated sales of such produce for others, without having possession of the property,—and for such business so conducted by him he received as compensation therefor a percentage on the gross amount of such sales. It was also stipulated that appellants Lyman & Giddings were engaged in the city in negotiating the sale of, and did sell, real estate, situated in the city and elsewhere, for persons owning the same, and in bringing together persons desiring to sell and purchase, and they sold such property, and for such services they received a compensation determined by receiving a certain percentage on the price of real estate sold, or received a specific sum agreed upon between them and the seller. In both cases the parties were prosecuted for failing to obtain a license under the city ordinance, and fined before the justice of the peace, and appeals were prosecuted to the circuit court, where, on trial *de novo*, they were again fined. They appealed to the Appellate Court for the First District, and in that court the judgments were affirmed, and they bring the records to this court by appeal.

Appellants insist that the city ordinance imposes a tax, and that it is not uniform, as required by the constitution, nor is it imposed by a general law; that the city charter does not authorize the adoption of an ordinance that would embrace the occupations or business in which appellants are

severally engaged, and that the legislature was powerless to enact the provision of the charter under which the ordinance was adopted. The provision of the charter referred to is clause 91, of section 62, of the general law incorporating cities, villages and towns. (Rev. Stat. 1874, p. 223.) It reads: "To tax, license and regulate auctioneers, distillers, brewers, lumber yards, livery stables, public scales, money-changers and brokers." The ordinance adopted under this provision is this:

"SEC. 1. It shall not be lawful for any person to exercise within this city the business of a money-changer or banker, broker or commission merchant, including that of merchandise, produce or grain broker, real estate broker and insurance broker, without a license therefor.

"Sec. 2. A merchandise, produce or grain broker is one who, for commission or other compensation, is engaged in selling or negotiating the sale of goods, wares, merchandise, produce or grain belonging to others.

"Sec. 3. A real estate broker is one who, for commission or other compensation, is engaged in the selling of or negotiating sales of real estate belonging to others, or obtains or plans loans for others on real estate.

"Sec. 4. An insurance broker is one who is engaged in procuring or places insurance on buildings, vessels and other property, for others.

"Sec. 5. There shall be collected, annually, for every license granted for any banker, the sum of $100; and there shall be collected, annually, for every license granted for any broker, or commission merchant, or money-changer or broker, the sum of $25; and there shall be collected, annually, for any license granted any real estate broker, the sum of $25; and there shall be collected, annually, for every license granted for any insurance broker, the sum of $25.

"Sec. 6. That any person violating any provision of this ordinance shall be subject to a penalty of not less than $25

nor more than $100, and to the same penalty for every subsequent violation thereof."

We have so repeatedly and uniformly held that a license fee is not a tax, in the constitutional sense, that it may be regarded as settled. But inasmuch as the argument is so repeatedly urged that it is a tax, we may add some further considerations upon the question. If we concede such a fee is a tax, we are unable to perceive that it can benefit appellants' position a particle. If that is conceded, it is a municipal tax, and such taxes are regulated and controlled by the 9th and 10th sections of article 9 of our constitution. The previous sections of that article refer to State and county revenue, and not to taxes for cities, towns and villages. They are not named in the previous sections. But the 9th and 10th sections relate to and regulate the taxes for cities, towns and villages. They are therein named,—the manner of investing such bodies with the taxing power, and the objects, subjects, and the manner of their imposition, are specified. This being true, we need to look to them alone to determine whether these fees, if they must be regarded as taxes, are sustained by these sections.

The 9th section provides that the legislature may authorize the corporate authorities of such municipalities to levy taxes for corporate purposes. This is the source of their power to impose such taxes. But the power of the legislature and the corporate body is limited to uniformity as to persons and property within the corporate limits of such bodies. Any attempt by the legislature or the corporate authorities to depart from uniformity as to persons or property is prohibited, and such an effort would be void. The 10th section is a limitation on the power of the legislature to impose taxes on municipal corporations, or the persons or property thereof, for corporate purposes, but it may require taxes, uniform as to persons or property therein, to be imposed for the payment of corporate debts. Thus it is seen municipal taxes

are specifically provided for by these sections. It is manifest that such taxes do not depend upon, nor are they controlled by, the previous sections of that article.

If these fees, as contended, are taxes, do they conform to the requirement of the 9th and 10th sections of that article? They are manifestly uniform as to all persons of the same class within the limits of the city. The provisions of these sections are similar to the same provisions in the constitution of 1848, and under that instrument it was held that a tax or license fee was only required to be uniform as to the class enumerated, within the corporate limits. (See *East St. Louis* v. *Wehrung*, 46 Ill. 392, and the same case of the January term, 1868, unreported.) The provisions in each constitution being the same, they will admit of but one construction. Nor do we see any reason for departing from the construction then given to these provisions. So it is seen that whether these licenses be regarded as fees or taxes, they are fully justified by the constitution, nor do they violate any of its provisions. There is no limitation on the legislative power to invest such municipalities with power to tax for corporate purposes, but they shall be uniform as to persons and property within the corporate limits. If such power has been conferred, and properly exercised, then, if a tax, as claimed, it must be sustained.

It is, however, urged, that the 91st clause of section 62 of the city charter is repugnant to the latter clause of section 1, of article 9, of the constitution. If this is a tax, it in no sense depends on that section for its validity. As we have seen, this tax is dependent alone on the 9th and 10th sections of that article, and can not be controlled by the 1st and 2d sections, because they refer to other and entirely different taxes, levied for other than city purposes. It is true that this clause of section 62 does not require uniformity, but it does not attempt to dispense with it, and the constitution

13—110 ILL.

does require it, and the ordinance conforms to the require-
ment, and that satisfies the constitution.

If this is a tax, then there can be no question that the
General Assembly had the power to authorize its imposition.
Judge COOLEY, from the adjudged cases, states the general
doctrine to be: "The power to impose taxes is one so unlim-
ited in force, and so searching in extent, that the courts
scarcely venture to declare that it is subject to any restriction
whatever, except such as restrains the authority which exer-
cises it. It reaches every trade or occupation; to every object
of industry, use and enjoyment; to every species of posses-
sion; and it imposes a burden which, in case of failure to dis-
charge it, may be followed by seizure and sale or confiscation
of property. No attribute of sovereignty is more pervading,
and at no point does the power of government affect more
constantly and intimately all of the relations of life, than
through this power." (Cooley's Const. Lim. 479.) This state-
ment of the doctrine must, of course, be understood as qual-
ified by constitutional limitations imposed by the people when
exercising their sovereign powers. As there is no provision
of the fundamental law forbidding the imposition of this fee
or tax, there can be no question that the legislature had
power to authorize its imposition.

It is further insisted that the 91st clause of section 62 of
the city charter does not confer power on the city to demand
a license fee, in these cases, for the privilege of pursuing the
various occupations of brokers. It is claimed that these
appellants are not brokers,—that Braun is a commission
merchant, and Lyman & Giddings are real estate agents,
and neither calling is embraced in that clause of the charter,
and not in fact being brokers, they were not required to pro-
cure licenses to exercise their callings. Lexicographers of
high authority have defined the term "broker" to be one
who is engaged for others in negotiating contracts relative to
property with the custody of which they have no concern,

and this is the precise technical meaning of the term. A factor is one who sells property of others when he has its possession. Here, Braun negotiated sales of property of which he never had possession, which brings him within the definition, and Lyman & Giddings only sold property of others of which they had no possession. This brings them within that clause of the charter, and the power of the city to demand a license fee, and to impose a penalty for not procuring a license before commencing and transacting their business.

It is also insisted that if this is a police regulation, it can not be applied to any but immoral vocations, or such as are injurious to the well being of society. The term, "police power of the State," is used in different senses. In its broadest and most unlimited sense it embraces all laws or regulations for the well being or government of the people. In its most limited sense it is used to express the power of preservation of the health or safety of the people by depriving persons of liberty, or to destroy private property, in despite of constitutional limitations, in great and pressing emergencies, to prevent the spread of contagious diseases, or other great calamities to the people or their property. To accomplish such purposes men are deprived of liberty and property without due process of law, because to resort to the ordinary processes of the law would be too slow to avert the impending calamity. But appellants claim this is a tax, and if so, then the power is referable to the legislative power to raise or authorize the raising of revenue for general or local governments. The Federal government, for almost a quarter of a century, has imposed such fees or taxes on various business or callings, for revenue purposes, without the power being questioned. The act of Congress prohibits persons raising or producing tobacco for sale, from selling it at retail, or to any person not having a license to purchase such property. Nor can the cultivator manufacture the raw material pro-

duced by his own labor without paying a heavy tax, and the manufacturers of it and particular kinds of medicines have been heavily taxed on such articles. Even matches, which enter as largely into the daily consumption of the whole people as any other article, except food, have been subject to a heavy tax. None of these things are supposed to be pernicious to the public, and yet we are aware of no question having been made and sustained as to the constitutionality of the law imposing the fee or taxes, and unless restrained by constitutional limitation the States are as fully invested with power to raise revenue for State and local purposes as is Congress to provide revenue for Federal purposes.

Nor is the objection well taken that no business can be regulated, or burthens imposed on its pursuit, unless there be power to suppress the business. In the case of *Wiggins Ferry Co.* v. *East St. Louis,* 102 Ill. 560, it was held the legislature had power to authorize the city to regulate the ferry, and impose a license fee for each boat used by the company, notwithstanding the franchises the company were exercising were granted by charter from the legislature. Yet no one will claim that the legislature could repeal the charter or impair its franchise, or authorize the city to do so. This case was affirmed in the Federal Supreme Court. Until a comparatively recent date our legislature required all merchants of every kind to pay for and procure a license to vend their goods, wares and merchandise, under a penalty. Nor are we aware that the power was ever questioned. And similar laws have been in force in the various States of the Union, from their organization until a recent date, if not till the present time. In the case of *Howland* v. *Chicago,* 108 Ill. 496, it was held that the legislature had power to authorize the city to require a keeper of a livery stable to procure a license for the purpose, under a penalty for failing to do so. Such an occupation is a natural right, as legitimate as is that of either of these appellants. We have no question of the

legislative power to authorize the imposition of these license fees, and the penalties for not complying with the ordinance.

Thus we have seen that whether this be called a license fee or a tax, it is fully authorized by the constitution; nor does the charter or ordinance conflict with any of its provisions.

The judgments of the Appellate Court in these cases are affirmed.

*Judgments affirmed.*