# CHARLES J. HUSTIS ET AL.

## v.

# H. S. PICKANDS ET AL.

*Brokers—Purchase of Mining Stock—Action for Commissions—License —Ordinance—Pleading.*

1. Brokers in mining stocks are embraced within an ordinance of the city of Chicago, which renders it unlawful for any person to exercise, within the city, the business of a money changer or banker, broker or commission merchant without a license therefor.

2. A broker who has purchased mining stock for a third party, in violation of such ordinance, without a license, can not maintain an action for commissions.

[Opinion filed Sept. 18, 1888.]

IN ERROR to the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This was an action by plaintiffs in error against the defendants in error to recover for commissions alleged to have been earned by the plaintiffs while acting as brokers, within the corporate limits of the city of Chicago, for the defendants, in the purchase of certain mining stocks.

The defendants filed the plea of the general issue and affidavit of merits, also a special plea, to which the plaintiffs interposed a demurrer. The court overruled the demurrer, whereupon, the plaintiffs electing to abide by their demurrer, final judgment was rendered, from which plaintiffs bring error to this court, and assign for error the overruling of said demurrer. The said special plea is as follows:

"And for a further plea in this behalf the said defendants, by Frederic Ullmann, their attorney, say that the said plaintiffs ought not to have maintained their aforesaid action thereof against them, because they say that, at the time of the making of the said several supposed promises and undertakings in the said declaration mentioned, if any such were or was made,

Hustis v. Pickands.

the plaintiffs were carrying on and exercising, within the corporate limits of the city of Chicago, in said Cook County, to wit, at the county of Cook, the business of brokers by the co-partnership name and style of Hustis, Conglan & Ray; and the defendants in fact aver that, at and prior to the time aforesaid, there was and had been, and from thence hitherto has been and still is in full force and effect in said city of Chicago, in the county aforesaid, an ordinance theretofore duly passed by the city council of said city, duly approved by the mayor of said city, and duly published according to law, in the words and figures as follows, to wit:

"*Be it ordained by the City Council of the City of Chicago:*

"Section 1.  It shall not be lawful for any person to exercise within the city the business of a money changer or banker, broker or commission merchant, including that of merchandise, produce or grain broker, real estate broker and insurance broker, without a license therefor.

"Section 2.  A merchandise, produce or grain broker is one who, for a commission or other compensation, is engaged in selling or negotiating the sale of goods, wares, merchandise, produce or grain belonging to others.

"Section 3.  A real estate broker is one who, for commission or other compensation, is engaged in the selling of or negotiating sales of real estate belonging to others, or obtains or places loans for others on real estate.

"Section 4.  An insurance broker is one who is engaged in procuring, or places insurance on buildings, vessels or other property for others.

"Section 5.  There shall be collected annually, for every license granted for any banker, the sum of $100, and there shall be collected annually, for every license granted for any broker, including any merchandise, produce or grain broker or commission merchant, or money changer or broker, the sum of $25; and there shall be collected annually, for any license granted any real estate broker, the sum of $25; and there shall be collected annually, for every license granted for any insurance broker, the sum of $25.

"Section 6.  That any person violating any provision of

this ordinance shall be subject to a penalty of not less than $25 nor more than $100 and to the same penalty for any subsequent violation thereof."

"And the defendants further aver that, at the time of the making of the said several supposed promises and undertakings in said declaration mentioned, the said plaintiff had not obtained, and did not then, nor theretofore nor thereafter have the license specified in said ordinance or any other license authorizing them, or either of them, to exercise said business so by them carried on as brokers within the city of Chicago, in said county of Cook; but, on the contrary thereof, said plaintiffs then were, theretofore had been, and still are exercising the said business as brokers within the said city of Chicago, without having obtained any license therefor, and in violation of the provisions of said ordinance.

"And these defendants further aver that the sum or sums of money sought to be recovered in this action by said plaintiffs from these defendants are alleged to be due to said plaintiffs from these defendants for commissions or compensation alleged to have been earned by said plaintiffs as brokers in purchasing certain stocks for these defendants, and at their alleged request within the said city of Chicago, at the time aforesaid.

"And this the defendants are ready to verify, wherefore they pray judgment if the plaintiffs ought to have their aforesaid action against them," etc.

Mr. JESSE B. BARTON, for plaintiffs in error.

Plaintiffs in error insist, first, that the business of stock broker is not included in the ordinance, and that, therefore, plaintiffs were not required to take out a license; second, that the question of whether or not plaintiffs had a license, even though positively required to take out one, was wholly between them and the municipality, and could not in any way affect the relations between plaintiffs and defendants. There being nothing unlawful in any of the occupations enumerated in the ordinance, either in themselves or as the result of statutory inhibition, there is nothing in the nature of the business sought to be licensed which would vitiate the contract between

the broker and his customer under which the broker could claim remuneration for his services.

All enactments should be construed according to their intention, and the intention of this ordinance is manifest. It aims to exact a license fee from every banker and every money changer, whose occupations are so well known as to require no definition, and from every merchant, produce or grain broker, every insurance broker and every real estate broker, and that no guilty man may escape, it was made clear by sections 2, 3 and 4, what was intended to be included. Had it been intended to require of a stock broker a license, his business would have been more particularly described than the others, for a stock broker is a *rara avis* in Chicago, while the others are more numerous than the followers of any other business in the city.

Assuming, however, that plaintiffs in error violated the provisions of the ordinance when they acted as brokers in buying mining stocks for the defendants, yet they are entitled to recover their brokerage from the defendant. The statute authorized the city to tax, license and regulate, and if by the ordinance it has taxed and licensed this particular business, it has not declared it unlawful to pursue it without paying the tax and taking out the license, and is powerless to make it unlawful even if it tried.

It is absurd to say that the same act committed in the same manner, with the same publicity, in the same commonwealth, is unlawful on one side of a municipal boundary and lawful on the other side in any sense in which the word unlawful can be used when an act so characterized would vitiate a contract based on the act. While it may be said that the authorized ordinance of a municipality has the same effect as an act of the legislature and be good as a general principle of law, yet the municipality can not exceed the powers of the legislature and the legislature could never say that the same consideration for a contract was in one place in the State unlawful and the contract void, and in another place was lawful and the contract valid. The following cases hold that a penalty-imposing ordinance in no respect enters into the civil relations between the

person liable to the penalty for an infraction of the terms of the ordinance and other persons: R. R. Co. v. Ervin, 89 Pa. St. 71; Henry v. Sprague, 11 R. I. 456; Chambers v. Trust Co., 1 Disney, (Ohio), 336; Van Dyke v. Cincinnati, 1 Disney, 532; Jenks v. Williams, 115 Mass. 217; Peck v. Austin, 22 Texas, 261; See Royall v. Virginia, 116 U. S. 572; Insurance Co. v. Polleys, 13 Pet. 157.

There is yet another reason why this plea is bad, and that is on account of a very wise and just distinction laid down in the English case of Smith v. Mawhood, 14 M. & W. 452, which is, that when it is the intention solely of the legislative body to make the act illegal and to prohibit it, then the act can not be a good consideration for a contract; but when the sole or main object is to raise revenue, the act is not illegal in the sense that a contract based upon it is void, and can not be enforced.

Mr. FREDERIC ULLMANN, for defendants in error.

An action for commissions or brokerage for negotiating the sale of stocks belonging to other parties can not be maintained by brokers who have not obtained a license to do business as brokers under the city ordinance set out in the plea. The weight of authority is that the imposition of a penalty implies a prohibition.

"When an incorporated town or city has been invested with power to pass an ordinance by the legislature for the government or welfare of the municipality, an ordinance enacted by the legislative branch of the corporation, in pursuance of the act creating the corporation, has the same force and effect as a law passed by the legislature, and can not be regarded otherwise than a law of and within the corporation." Mason v. Shawneetown, 77 Ill. 533, 537; Wright v. C. & N. R. R., 7 Ill. App. 438; Hopkins v. Mayor of Swansea, 4 Mills & W. 640; Heland v. City of Lowell, 3 Gray, 408.

Where a statute enacts a penalty for carrying on a particular business without a license, no action can be maintained on a contract made by one who violates the statute, even though the statute contains no prohibition. Bensley v. Bignold, 7

Cravener v. Hale.

Eng. Com. Law, 188; Downing v. Ringer, 7 Mo. 585; Ætna Ins. Co. v. Harvey, 11 Wis. 412; Williams v. Cheney, 3 Gray, 222; Jones v. Smith, 3 Gray, 500; Cincinnati Mut. Health Assurance Co. v. Rosenthal, 55 Ill. 85; Fridley v. Bowen, 87 Ill. 151; Penn v. Bornmann, 102 Ill. 523; Banking Co. v. Rautenberg, 103 Ill. 460; Farrow v. Vedder, 19 Ill. App. 305; Cope v. Rowlands, 2 M. & W. 149; Johnson v. Hulings, 103 Pa. St. 498.

McALLISTER, J.   The ordinance set out in the special plea has been adjudged to be legal and valid. Braun v. Chicago, 110 Ill. 186. While the language of the ordinance is somewhat peculiar, yet we are inclined to the opinion that it was intended to and does fairly embrace and apply to brokers in stocks.   If we are right in that conclusion then it follows, as we think from the doctrine of the prevailing current of authorities, that the plaintiffs, being unlicensed as brokers at the time of the purchase by them as such, of the stock in question, their act was unlawful and they can not recover commissions, so that the plea must be held to be good and the judgment affirmed.

*Judgment affirmed.*