City of Chicago, Appellee, v. E. M. Dollarhide, Sued
as E. C. Dollarhide, Appellant.

Gen. No. 33,533.

Opinion filed January 2, 1930.

M. D. DOLAN, for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, for appellee; LEON HORNSTEIN, JAMES I. McCARTHY and ROY S. GASKILL, Assistant Corporation Counsel, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the court.

On a trial before the court without a jury defendant was found guilty of carrying on a general brokerage business without a city license and fined the sum of $25, upon which finding a judgment was entered after the court had overruled defendant's motion in arrest of the judgment, and defendant brings the cause here by appeal.

In the inception of the trial, Mr. Leon Hornstein, representing the city, made the following statement:

"It is stipulated and agreed that the defendant is a resident of, and is and during 1928 and prior thereto was engaged in business in Chicago, Cook County, Illinois, where he occupies offices which bear a sign erected by him in public view reading 'Dollarhide Lumber Company'; that he has not applied for or taken out a license under the ordinance of Chicago relating to General Brokers; that in his business he and help employed by him take orders in Chicago for lumber to be delivered by non-resident lumber mills to consignees in Chicago; that he carries no stock of lumber,

handles no lumber, represents no lumber mill, jobber or dealer in Illinois, takes no orders for lumber located, stored or owned by any person or concern in Illinois; that he sends the orders he receives to one of twelve wholesale lumber mills located outside the State of Illinois, and the lumber so ordered is shipped direct to the purchasers by the mills, jobbers or dealers, who send their bills to, and receive remittances direct from, the purchasers; that all orders (unless the defendant is authorized in a particular case to sell at a fixed price) are taken subject to rejection by the non-resident principal; that defendant received a commission on all orders accepted and filled, which is paid by the non-resident mills; that defendant journeys about the city and vicinity soliciting orders for lumber, which orders are taken in the name of the non-resident mills.''

It was also agreed by counsel for the city and defendant that the introduction of the foregoing stipulation in evidence should not preclude either party from introducing additional evidence ''not contrary to the facts stipulated.'' The ordinances involved in this proceeding are as follows:

''City of Chicago Municipal Code of 1922, Section 373, 'It shall be unlawful for any person, copartnership, association, firm or corporation to engage in the business of or to act in the capacity of a general broker, as hereafter defined, without first having obtained a license so to do as herein provided.'

''Section 374, 'Any person, copartnership, association, firm or corporation, other than an employee of the principal or principals for whom the business is done, that negotiates, buys, sells, trades, leases or handles for another on a commission basis, or on the basis of compensation in proportion to the amount of the transaction, any stocks, bonds, mortgages, loans, investment securities, certificates of indebtedness, bills of exchange, letters of credit, steamship transportation

tickets, grain, provisions, produce and live stock, goods, wares, and merchandise, or other commodity, property or article (except real property) whether similar or dissimilar to those herein mentioned, or acts through the medium of another licensed broker in the same capacity, or for any of the purposes aforesaid, shall be and is hereby defined as a general broker.' ''

On behalf of the city, Hugh Ryan, a city license investigator, and one John H. Wilson, assistant superintendent of the department of licenses of the city, were examined as witnesses, and testified to conversations with the defendant. Nothing was extracted from these witnesses *de hors* the stipulation except that Ryan testified that the witness Wilson said to the defendant "according to the city ordinance you are a broker," and defendant answered "yes." Defendant, however, denies making such statement, the effect of which we will hereafter refer to. Counsel for the city introduced sections 373 and 374, theretofore read in evidence by counsel, and thereupon rested the case of the city.

Defendant was examined as a witness and *inter alia* denied that he stated to Wilson or Ryan that he took orders from everybody or anybody that came along; and testified that none of the mills he represented had lumber in Illinois; that he did not sell any lumber supplied, furnished, manufactured or produced in Illinois; that he had no employees except a stenographer, and further testified that he did not say to Mr. Wilson or Mr. Ryan in March 1928 that he represented competing lines of lumber, and further testified that in case an order was rejected or the firm was unable to fill it, the order was canceled; that he did not tell Mr. Wilson or Mr. Ryan that he was a broker; that he never represented or held himself out as, or stated to anybody that he was a broker; that he did not represent or presume, or try to represent any person or persons other than the 12 mills, hereinabove specified, nonresidents of the

State of Illinois; that he never sold lumber for the Edward Hines Lumber Company, the North Side Lumber Company, the Pilsen Lumber Company, or the Bishop Lumber Company; that he knew all these people, but he never sold or handled any lumber for them directly or indirectly but he sold lumber to them; that he never placed orders through any broker, and never received commissions from any broker for lumber sales; that he remembers a conversation with Mr. Wilson in the presence of Mr. Dolan in the City Hall; that he told Wilson he was a sales representative of these 12 mills; that Wilson tried to convince him that he was a broker but defendant did not admit he was a broker to Wilson.

Every material question here involved is decided in *Linehan v. City of Chicago*, 227 Ill. App. 255, in which the Supreme Court denied an application for a writ of certiorari, making the opinion of this court final. Since that decision section 374 of the Municipal Code, above set out, has been amended, evidently in an effort to avoid the effect of the Linehan decision, *supra*. The contention that defendant admitted that he was a broker is not involved in the Linehan case. Neither is the question here involved as to defendant being engaged as the representative of the 12 nonresident lumber mills in interstate commerce.

First, as to the contention that defendant admitted that he was a broker. The record shows that he denied that he made any such statement to Mr. Wilson in the presence of the witness Ryan. Not only does defendant deny that he made any such statement, but the evidence of Wilson sustains defendant in such denial. True it is that if defendant had made any such statement, that would not amount to proof that he was a broker. Whether or not he was a broker is a question of law. Furthermore, the statement of Ryan in this regard is overcome by defendant's denial that he made such statement, which denial is sustained by Wilson,

to whom Ryan said defendant made the statement. Therefore, in any view of the case, such statement has no probative value.

That defendant is a selling agent representing 12 nonresident lumber manufacturers, which, while undisputed, does not make him a broker within the meaning of the two sections of the Municipal Code hereinabove set forth, or liable to take out a license as a broker, it appears that defendant has a permanent connection with the 12 nonresident lumber manufacturers represented by him, and that he does not hold himself out to represent manufacturers generally, or as a broker, and that he does not accept or place orders for other manufacturers or industries than those with which he has permanent and continued dealings, as testified by defendant and stipulated by the parties in the case.

As said in the *Linehan* case, *supra:*

" 'Brokers' in the ordinary acceptance and meaning of the word, designate persons who solicit business generally and represent any parties who may come to them. They are sometimes referred to as middlemen or negotiators of contracts or bargains between others. . . . The distinction between an agent representing a permanent, particular company, and a broker representing customers generally has been pointed out and followed in many cases. In *McKinney v. City of Alton,* 41 Ill. App. 508, it was sought to impose a license fee on insurance agents under subsection 91 in question. It was there held that such agents are not brokers because they 'sustain a fixed and permanent relation to the companies they represent,' and do not solicit business for others. To the same effect is *City of East St. Louis v. Brenner,* 59 Ill. App. 604, where the court aptly said of an insurance agent: 'He represents only one party as an agent, like any other solicitor or drummer, who travels, seeking to build up trade. The business of a "broker" is to represent all parties, buyers, or sellers, in his line.' This same distinction was ob-

served in *Braun v. City of Chicago,* 110 Ill. 186, where a broker sold produce on a percentage for whoever employed him. The same is true of *Banta v. City of Chicago,* 172 Ill. 204, where the brokers were characterized as 'engaged generally in business as negotiators of contracts and bargains between others.' This distinction has been observed in many other cases which might be cited, and none of the cases cited by defendants holds to the contrary. We are of the opinion that the bill set up facts showing that complainants and other persons in like business were merchandise and manufacturers' agents and not 'brokers' within the meaning of subsection 91, aforesaid.

" 'The settled rule is that statutes granting powers to municipal corporations are to be strictly construed, and any fair and reasonable doubt as to the existence of such powers is resolved against the municipal corporation claiming the right to exercise them. A city having no power, except by delegation from the General Assembly, to license any occupation or require the payment of a tax for the privilege of engaging in it, the power must be expressly granted in the charter or be a necessary incident to a power so granted.' *Potson v. City of Chicago,* 304 Ill. 222.

"The ordinance in question is not within the delegated police power of the municipality. To regulate the business of manufacturers' agents is not granted under any of the ordinary police powers, and the legislature has not delegated to cities and villages the entire police power of the State. *City of Chicago v. M. & M. Hotel Co.,* 248 Ill. 264; *Stoessand v. Frank,* 283 Ill. 271; *City of Chicago v. O'Brien,* 268 Ill. 228; *People v. Village of Oak Park,* 268 Ill. 256."

The foregoing decision is to date the law of this State.

The amendment in section 374 of the Chicago Municipal Code, in so far as it attempted to nullify the *Line-*

*han* decision on this point and to define "a general broker," failed of its intent and purpose.

The occupations sought by the foregoing section are arbitrarily designated by the words, "shall be and is hereby defined as a general broker." It will be perceived that nowhere is the term "manufacturers' agent," or a like term, used or referred to, and as said in the *Linehan* case, *supra:*

" 'The express enumeration of certain occupations or businesses in the statute over which the municipalities are given control is by a well-known canon of construction an exclusion of all other occupations. . . . It was not the intention of the legislature to confer unrestrained and unlimited police power upon municipalities.' *People v. City of Chicago,* 261 Ill. 16."

The proofs undisputedly show that defendant is a manufacturers' agent representing 12 lumber firms which are nonresidents of the State of Illinois; that he solicits orders for them in and about Chicago, and when procured sends them to one of such 12 nonresident lumber firms.

In *Haberer & Co. v. Smerling,* 225 Ill. App. 336, the following definition was quoted with approval from *Stratford v. City Council,* 110 Ala. 619:

"We would say the idea of exclusiveness enters into an employment of agency, while with respect to brokers, there is a holding out of one's self generally, for employments in matters of 'trade, commerce and navigation.' "

The fact that the defendant represented a number of such mills does not change his position from a manufacturers' agent to a general broker. It is the facts of the case which determine the capacity in which the defendant acted. Such cannot be overcome by an attempt to define in an ordinance that such person is really what he is not, and cannot be changed by ordinance from a manufacturers' agent to that of a general broker.

Article V, section 1, of the Cities and Villages Act, Cahill's St. ch. 24, ¶ 65 (91), provides as follows:

"The city council in cities, and the president and the board of trustees in villages shall have the following powers . . .

"Ninety-first: To tax, license and regulate auctioneers, distillers, breweries, lumber yards, livery stables, public scales, ice cream parlors, coffee houses, detective agencies, private detectives, money changers and brokers."

Such act is the only source of the cities' power to license occupations. There is no license of sales representatives or manufacturers' agents covered in that section or any other. The enumeration of powers in that statute is exclusive of all other subjects and the statute is to be strictly construed as if it in express terms inhibited the licensing of all trades and occupations not mentioned therein.

In *City of Cairo v. Bross,* 101 Ill. 475, the court said:

"When the legislature, by the general incorporation act, declares that the corporate authorities of cities and villages organized and acting under its provisions shall have power to license certain occupations and kinds of business, specifically enumerating them, such declaration must by a familiar canon of construction be construed precisely as if the act in express terms inhibited the licensing of all trades and occupations not contained in the enumeration."

The word "broker" has a fixed, definite meaning, as defined by the authorities and the character and attributes of a broker cannot be imposed by any ordinance in an attempt to make one a broker who is not a broker by definition in an ordinance. Defendant is not a broker, general or otherwise, but is a manufacturers' agent.

As said in *Kiel v. City of Chicago,* 176 Ill. 137:

"The power to pass an ordinance and impose a penalty for its violation is to be strictly construed, and is

not to be extended, by implication, to persons or things not expressly within the terms of such power."

A further reason why the defendant should not have been proceeded against under the ordinance which he was charged with violating, is the undisputed fact that as the agent of the manufacturers of lumber, he was engaged exclusively in interstate commerce. There is no evidence in the record disputing this fact. He represented 12 wholesale lumber mills, nonresidents of the State of Illinois. He solicited orders for lumber for these nonresident mill owners in the City of Chicago, and the orders were filled by the shipment of lumber from the nonresident mills to the purchasers. The lumber was billed to the purchasers and they paid the mills, and the defendant was paid his commission by the mills whose lumber he sold. Further, it is undisputed that defendant sold no lumber supplied, furnished, manufactured or produced in Illinois, and that he had personal knowledge of the shipment of lumber of the mills, orders for which he procured for the mill owners. The sales negotiated by defendant for his principals were transacted in interstate commerce and beyond the power of the State to interfere therewith by taxation, license requirements, or otherwise.

In *Shead v. Louisiana Lumber Co.*, 182 Ill. App. 310, the plaintiff, a Chicago lumber broker, sold for defendant, a Missouri corporation, certain lumber, to be shipped to Arkansas and sued to recover his commission. The suit was defended on the contention that he was not entitled to recover because he had not taken out a broker's license, as required by the ordinances of the City of Chicago, and the court said:

"The contention that the plaintiff is not entitled to recover on the ground that he has no broker's license, as required by an ordinance of the City of Chicago, cannot be sustained. The transaction in question was one of interstate commerce. As to interstate commerce transactions the said ordinance of the City of

Chicago, making it unlawful for brokers to conduct a brokerage business without obtaining a license as therein provided, is of no force or effect.''

It was held in *City of Bloomington v. Bourland*, 137 Ill. 534, that an ordinance of a city prohibiting the soliciting of orders for books within the city by an agent for a wholesale house in another State, without taking out a license and paying a license fee, was void as being in conflict with that clause of the United States constitution which gives congress power to regulate interstate commerce.

In *Stockard v. Morgan*, 185 U. S. 27, which was tried on an agreed state of facts in the trial court similar to the stipulation of the parties in this case, in which the Supreme Court of Tennessee held complainants liable for the tax and dismissed their bill to enjoin its collection, the Supreme Court of the United States reversed the judgment, holding that the complainants were engaged in interstate commerce and were not bound to pay the tax. In support of this conclusion the court said:

''Although it is said in the opinion of the state court herein that the thing taxed is the occupation of merchandise brokerage, and not the business of those employing the brokers, yet we have seen from the cases already cited that when the tax is applied, to an individual within the state selling the goods of his principal who is a nonresident of the state, it is in effect a tax upon interstate commerce, and that fact is not in anywise altered by calling the tax one upon the occupation of the individual residing within the state while acting as the agent of a nonresident principal.''

*Crenshaw v. Arkansas*, 227 U. S. 389, supports the doctrine announced in *Stockard v. Morgan, supra.*

In *International Text-Book Co. v. Pigg*, 217 U. S. 91, the court in defining interstate commerce said:

''Importation into one state from another is the indispensable element, the test, of interstate commerce;

and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce." *Dahnke-Walker Milling Co. v. Bondurant,* 257 U. S. 282; *London Guar. & Acc. Co. v. Watte,* 234 Ill. App. 497; *Lehigh Portland Cement Co. v. McLean,* 245 Ill. 326.

*Harmon v. City of Chicago,* 140 Ill. 374, was a case where the city ordinance required a license fee for the operation of a tug boat on the Chicago River on the theory that such license fee was compensation to the city for increased navigation facilities in dredging and deepening the river channel, and the Illinois court held that the tax was lawful. However, the Supreme Court of the United States, in 147 U. S. 396, reversed the Illinois decision, saying:

"In the present case a neglect or refusal of the owner of the tugs to pay the license required by the ordinance subjects him to the imposition of a fine. His only alternative is to pay the fine, or the use of his tugs in their regular business will be stopped. . . . It would be a burden and restraint upon that commerce, which is authorized by the United States and over which Congress has control. No state can interfere with it, or put obstructions upon it, without coming in conflict with the supreme authority of Congress."

From what we have heretofore said we hold that the defendant is not a general broker, but a manufacturers' agent of the 12 nonresident lumber mills which he represented, and for whom he did business, and that in the doing of such business and all of the transactions, so far as shown by the record, he was engaged in interstate commerce and therefore not subject to any ordinance of the City of Chicago or statute of the State of Illinois interfering with such interstate commerce by the imposition of a tax, license fee or otherwise.

The judgment of the municipal court is reversed, and as the trial was before the court without a jury, we will do here what the municipal court should have done,— enter a judgment for the defendant without remanding the cause.

*Reversed and judgment here for defendant.*

WILSON, P. J., and RYNER, J., concur.