# Stratford v. City Council of Montgomery.

*Suit by City to recover Penalty for Carrying on Business without License.*

1. *Brokers; what necessary to constitute one; distinguished from ordinary agent.*—A broker is one whose business is to negotiate sales or contracts as an agent, or who is employed to make sales or purchases for a commission ; he being distinguished from the ordinary agent by the fact that the idea of exclusiveness enters into the employment of an agent, while with respect to a broker, there is a holding out of himself, generally, for employment in matters of trade, commerce and navigation.

2. *Commercial brokers; who are.*—A person, who represents in a particular city several customers and, without having the actual custody of the goods, sells by sample, charging a commission or brokerage, and has in said city his office where his samples are kept and displayed and his correspondence is conducted,and who pursues such general business of negotiating sales of goods for a livelihood, is a local commercial broker ; and the fact that he makes special arrangements in advance with those whom he represents, or that he was to be the sole representative of his employers in that particular city, does not tend to show that those arrangements were exclusive, nor does the fact that he did not sell or accept orders to sell for any person except those represented by him, indicate an exclusion of his right to act for any one who should employ him, so as to deprive him of the character of a broker as distinguished from a mere agent.

3. *Same; license tax, unconstitutional when imposed on brokers representing non-resident principals.*—A license tax imposed by a city upon commercial brokers doing business within the municipality is not applicable to brokers who represent non-resident principals exclusively ; and if so applied the tax is an invasion of the commerce clause of the Constitution of the United States, and is unconstitutional and void

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOMAS M. ARRINGTON.

The appellant, J. C. Stratford, Jr., was arrested on a warrant issued upon an affidavit, charging him with the offense of carrying on a business without first having

obtained a license as required by law, and in violation of section 411 of the City Code of Montgomery.

Upon the trial before the recorder of the city of Montgomery, the defendant was found guilty and fined fifty dollars. Thereupon he took an appeal to the city court of Montgomery. In that court the City Council of Montgomery filed a complaint, which is in words and figures as follows: "This case is brought to this court on appeal from the judgment of B. C. Tarver, as recorder of the city of Montgomery and *ex officio* a justice of the peace, in and for the county of Montgomery and State of Alabama, against the defendant. The said judgment was rendered on the 3d day of January for $50, besides $3, for the costs of suit, for carrying on the business of a local commercial broker in the city of Montgomery, without first having taken out and paid for a license therefor, contrary to section 411 of the City Code, which provides, among other things, that any person who shall engage in any business, trade or profession, or keep any establishment or do any business or act for which a license is required, without having first obtained such a license, shall, on conviction, be fined not less than ten or more than one hundred dollars. Plaintiff avers that sub-section 60 of section 410, of said City Code requires local commercial brokers, before engaging in business, to pay a license of $50, and plaintiff avers and charges that the said defendant, on or about the 2d day of January, 1894, within the corporate limits of the city of Montgomery carried on the business of a local commercial broker without first having obtained and paid for a license for that purpose, contrary to the provisions of said section 411, of the City Code, and the ordinance of the city of Montgomery, and this suit is brought and prosecuted by the City Council of Montgomery, to recover the penalty of one hundred dollars and the costs in said recorder's court for violation of section 411 of said City Code." Issue was joined on the plea of not guilty, and upon this issue the cause was tried upon the following agreed statement of facts: "The defendant is a resident citizen of this State and of this city, and keeps an office or place of business in this city for exhibiting samples of certain goods sold by samples (sales of other goods being made by reference to them by known goods or kinds) and carrying on his correspondence. He solicits and receives

[Stratford v. City Council of Montgomery.]

orders from wholesale and retail merchants of this State for the purchase of goods from several non-resident wholesale dealers in grain and provisions, who live and carry on their business in other States. He represents his principals under special agreement made with them separately, before the orders for purchases are solicited or received, to the substantial effect 'that he shall be the only agent or seller of their goods in this city; that each order solicited, received or obtained by him for the purchase of any goods in his line, shall be forwarded to his principal, subject to the approval of such principal, and if accepted and a sale actually consummated, the agent shall be entitled to a commission to be paid by the seller.' At stated intervals of time, accounts between himself and his different principals are settled. He does not accept orders from buyers to be filled by any person but one of his principals, nor does he sell for any one else. The goods, at the time the contracts for sale are made, are the property of his non-resident principals, and are situated in other States. In some instances the principals of this defendant consigned to him car-loads of flour or other provisions in barrels and in the original packages, before purchasers had been found; and in these instances, the defendant sold the same in unbroken packages on their arrival, as the property of the shipper or consignee, and billed them to the purchaser as coming from the shipper. The said goods consigned, as last above stated, were either sold from the cars in which they were brought to Montgomery, or were removed therefrom and placed in warehouses, from which they were sold and delivered by defendant, although in making out his bills against the purchaser, he made them not in his own name, but in the name of his principal or consignor whom he is representing in the city of Montgomery. The employment under said contract does not apply or refer to one or more sales, but is of a permanent or continuous nature. It is agreed that the defendant carries on the business in the city of Montgomery, as indicated by this statement of facts, for the purpose of making a profit or livelihood."

It was also proven upon the trial of this cause that "The City Council of Montgomery" was a municipal corporation, organized under an act of the legislature of Alabama, and "The City Council of Montgomery," prop-

erly authorized in the premises by said charter, had, previous to the arrest of the defendant, passed an ordinance requiring a license of $50, per annum from "local commercial brokers," and also passed an ordinance, punishing any person for carrying on the business of "local commercial brokers" in the city of Montgomery without having taken out and paid for the license required therefor, and providing, that, upon conviction such person should be fined not less than ten, nor more than one hundred dollars.

This being all the evidence in the case, the City Council of Montgomery asked the court in writing to charge the jury "that if they believed the evidence, they must find the defendant guilty." The court gave the charge as asked, and to the giving of the same the defendant excepted. The defendant then asked the court in writing to charge the jury "that if they believed the evidence, they must find the defendant not guilty." The court refused to give the charge, and to such refusal defendant excepted. Thereupon a verdict was rendered for the plaintiff, and judgment entered accordingly.

The defendant prosecutes the present appeal from the judgment of the city court, and assign as error the giving of the charge as requested by the plaintiff, and the refusal to give the charge as requested by the defendant.

ROQUEMORE & WHITE, for appellant.—1. The appellant is not a broker but a special agent, and this without regard to the interstate character of the business done. *Creveling v. Wood*, 95 Pa. St. 152; 2 Amer. & Eng. Encyc. of Law, 571, *et seq.*

2. If he is a broker, he is engaged exclusively in interstate commerce, and is not subject to State or city taxation or license. The question of the right of a State to tax or license business callings, and when such laws are obnoxious to the interstate commerce clause of the Federal constitution is fully dissussed in the following cases :—*Osborne v. Mobile*, 16 Wall. 479; *Pa. S. S. Co. v. Penn.*, 122 U. S. 326; *Leloup v. Mobile*, 127 U. S. 640; *Pensacola Tel. Co. v. W. U. Tel. Co.*, 96 U. S. 1; *Brown v. Maryland*, 12 Wheat. 419; *Crutcher v. Kentucky*, 141 U. S. 47; *Maine v. Grand T. R. Co.*, 142 U. S. 217; *McCall v. California*, 136 U. S. 104; *P. P. Car Co. v. Penn.*,

[Stratford v. City Council of Montgomery.]

141 U. S. 18; *Robbins v. Tax Dist.*, 120 U. S. 489; *W. U. Tel. Co. v. State*, 105 U. S. 460; *Ficklen v. Tax. Dist.*, 145 U. S. 1; *Moore v. Eufaula*, 97 Ala. 670; *Welton v. Missouri*, 91 U. S. 275, *Osborne v. State*, (Fla ) 14 So. Rep. 588; *In re Rozelle*, 57 Fed. Rep. 155.

3. If the fact shown in evidence, that in some instances goods in the original package were forwarded to appellant by his principals before orders were given, or purchasers found for them, is material in the inquiry of whether appellant is a broker, and liable to the license ordinance—the application of the principles of what is known as the original package law will apply, and absolve him from liability. For on such transactions the State can not place a tax, much less a license.

GRAHAM & STEINER, *contra.*—1. The first question presented in this case under the facts is, was the defendant a broker, or within the strict meaning of the word, the agent of his principals? Our contention is, that the facts show him to be clearly a "broker" as the word is used in commercial parlance. While it is true a broker is one of several kind of agents known to the law, there is a clear distinction between what is known as an "agent" and a "broker." An agent is "one who undertakes to transact some business, or to manage some affair for another by the authority and on account of the latter, and to render an account of it."—1 Bouv. Law Dictionary, 135; 1 Amer. & Eng. Encyc. of Law, 333. An agent, as the word is generally used, is one who is charged, under his employment, with the duty of doing something for his principal and clothed with a certain amount of discretion, the exercise of which, in the line of his authority, will bind his principal. This is not the case with a broker. A broker is a person who is "engaged for others in the negotiations of contracts relative to property, with the custody of which he has no concern."—1 Bouv. Law Dic., 267; 1 Ewell's Evans on Agency, 4; 2 Amer. & Eng. Encyc. of Law, 57; 1 Wait's Act. & Defenses, par. 10, p. 79; *Pott v. Turner*, 6 Bing. 702; Story on Agency, (8th ed.), 33, n. 7.

2. The next question presented is, is the said sub-section 60 of section 410 of said Code an invasion of the constitutional right of Congress to regulate commerce between the States? This question has been presented

[Stratford v. City Council of Montgomery.]

so often to the courts of this country that it ought to be settled, and we believe it has been. Sub-section 60 of section 410 of the City Code of Montgomery requires a license of "commercial brokers." This section does not impose a license upon them because they happen to deal only for persons who are non-residents of the State of Alabama, but because they are "brokers." It is a police regulation, which requires them to contribute their *pro rata* of the expense of the government. "This tax is not on the goods or on the proceeds of the goods, nor is it a tax on non-resident merchants; and if it can be said to affect interstate commerce in any way, it is incidentally, and so remotely as not to amount to a regulation of such commerce."—*Ficklen v. Tax. Dist.*, 145 U. S. 1. This case, in our opinion, makes a clear distinction between the tax placed upon a "drummer" and that of a mere occupation.—*Robbins v. Tax. Dist.*, 120 U. S. 489; *Wiggins Ferry Co. v. East St. Louis*, 107 U. S. 365; *Maine v. Grand Trunk R. Co.*, 142 U. S. 217.

3. The case of *Philadelphia S. S. Co. v. Pennsylvania*, 122 U. S. 326, contains a full and elaborate discussion of the subject before us, and of the right of States, and through them municipalities, to tax or license.—*In re Rudolph*, 2 Fed. Rep. 65. We desire to call especial attention to that part of the opinion in the case of *Ficklen v. Tax. Dist.*, *supra*, which holds that "no doubt can be entertained of the right of a State legislature to tax trades, professions, and occupations in the absence of inhibition in the State constitution in that regard, and where a resident citizen engages in general business subject to a particular tax, the fact that the business done changes to consist, for the time being, wholly or partially in negotiating sales between resident and non-resident merchants, of goods situated in another State, does not necessarily involve the taxation of interstate commerce, forbidden by the constitution."

4. It is admitted, as shown by the bill of exceptions, that the appellant was engaged in his occupation, by whatever name the law may call it, for the purpose of making a livelihood or profit. Such being the fact, the doing of business, if there is no law otherwise to prevent, without taking out a license therefor, as required by the city ordinance, would be a violation thereof, and subject the appellant to a fine.—*Carter v. State*, 44

[Stratford v. City Council of Montgomery.]

Ala. 29; *Weil v. State*, 52 Ala. 19; *Johnson v. State*, 44 Ala. 414.

BRICKELL, C. J.—The first question presented by the record, is whether the defendant was a "local commercial broker," within the meaning of the ordinance under which he was convicted. A "broker" is defined as "an agent employed to make bargains and contracts between other persons in matters of trade, commerce or navigation for a compensation commonly called brokerage."—Story on Agency, (8th ed.), § 28. Every broker is, in a sense, an agent, but every agent is not a broker. There are, however, so many incidents common to both relations, that it is difficult to define the precise line of demarkation. We would say the idea of exclusiveness enters into an employment of agency, while with respect to brokers, there is a holding out of one's self, generally, for employments in matters of "trade, commerce and navigation." It is the business or calling of acting or of offering to act, generally, as distinguished from isolated employments not induced by or resulting from the general business or calling. In determining whether particular facts constitute one an agent, strictly so-called, or a broker, the circumstance that the employments are many or few, cannot be made the controlling test. Capacity, means and other incidents may operate as factors in reducing or increasing the number of clients and volume of business, without, in the least, changing the nature of the business.

Applying these principles, we are of opinion that on the facts of this case, the defendant was "a commercial broker." He was a negotiator in the sale of goods. This general business, he pursued for a livelihood. He acted in the names of his customers, sold by sample without having actual custody of goods, and charged a commission or brokerage. His office, where his samples were kept and displayed and correspondence conducted, was in the city of Montgomery. He acted for "several persons," and there is nothing in the record to repel the inference drawn from the character of his business that he held himself out as open to employments from others. The fact that he made special arrangements in advance, with those who employed him, does not tend to show that those arrangements were exclusive, nor does the

additional fact that he was to be the sole representative of his employers in the city of Montgomery, have that tendency. It is stated, it is true, that he did not sell or accept orders to sell for any persons except those represented by him; but this is but another form of stating that he acted only as he was authorized to act. There was no agreement not to increase the number of his customers—no exclusion of his right to act for any who should employ him.

2. The second inquiry is one of more difficulty. It is shown that the defendant has acted only for non-resident principals in negotiating sales of merchandise which, at the time, was situated in other States. It is insisted that the ordinance of the city cannot be applied to such transactions without an invasion of the commerce clause of the constitution of the United States. We need not discuss the distinction between the exercise by the State of the police and the taxing power, for it is clear that the purpose of the ordinance was to raise revenue.—*Leloup v. Port of Mobile*, 127 U. S. 640; s. c. 76 Ala. 401. Nor do we consider it necessary to review at length the decisions of the Supreme Court of the United States relative to the power of the State to tax occupations. They will be found collated in the following cases: *Robbins v. Shelby Co. Tax. Dist.*, 120 U. S. 489; *Ficklen v. Shelby Co. Tax. Dist.*, 145 U. S. 1; *City of Titusville v. Brennan*, 153 U. S. 289.

In *Brown v. Maryland*, 12 Wheat. 419, 444, in which a State law, requiring an importer to take out a license and pay $50, before he should be permitted to sell a package of imported goods, was declared unconstitutional, MARSHALL, C. J., said: "But if it should be proved that a duty on the article itself would be repugnant to the constitution, it is still argued, that this is not a tax upon the article, but upon the person. The State, it is said, may tax occupations, and this is nothing more. It is impossible to conceal from ourselves that this is varying the form without varying the substance. It is treating a prohibition which is general, as if it were confined to a particular mode of doing the forbidden thing. All must see that a tax on the sale of an article which is imported only for sale, is a tax on the article itself. * * * So a tax on the occupation of an importer, is, in like manner, a tax on importation. It must add to

[Stratford v. City Council of Montgomery.]

the price of the article and be paid by the consumer or by the importer himself, in like manner as a direct duty on the article itself would be made."

In *Welton v. Missouri*, 91 U. S: 275,278, the same principle was announced : "Where the business or occupation consists in a sale of goods, the license tax required for its pursuit is, in effect, a tax upon the goods themselves." In *Robbins' Case*, the proposition . is elaborated and reaffirmed, and in *Leloup's Case*, on writ of error from this court, it is again announced as follows : "Of course, the exaction of a license tax as a condition of doing any particular business, is a tax on the occupation ; and a tax on the occupation of doing a business, is surely a tax on the business." It will be seen that under all these decisions, the principle is broadly stated that the State has no power to tax the agencies utilized in making disposition of the property, when it could not tax the property itself. There has been no departure from this doctrine, and it is applicable as well to brokers as to any other agency connected with interstate commerce, unless the rule is changed by *Ficklen's Case*, *supra*.

In *Brennan v. City of Titusville*, 153 U. S. 289, *Ficklen's Case* is itself reviewed, and it is said that it was "no departure from the rule of decision so firmly established by the prior cases. At least, no departure was intended, though as shown by the division of the court and the dissenting opinion of Justice HARLAN, the case was near the boundary line of the State's power." But in *Ficklen's Case*, the question was different from that now presented. Brokers had obtained a license to engage in business generally; they paid for the license and gave bond, pursuant to the statute, to pay over a certain proportion of their commissions. The bill was filed to enjoin an action on the bonds on the ground that the licensees had only been engaged in business connected with interstate commerce. It was held, in effect, that as the brokers had accepted the privilege of doing a general business—local and otherwise—the mere fact that their transactions were subsequently confined to interstate business was not a valid defense to a suit on the bonds. It is said in the opinion : "What position they would have occupied if they had not undertaken to do a general commission business and had taken out no license therefor, but had simply transacted business for non-resident

principals, is an entirely different question which does not arise on this record." But that is this case. While, as we have shown, the business of the defendant was general, so as to constitute him a broker, it by no means follows that it required he should also take local business. He might, as he did, confine himself to interstate business and still be a "broker," without becoming liable to the tax.

We said, commenting on *Robbins' Case*, in *State v. Agee*, 83 Ala. 110, that whatever might be our views as to the soundness of that decision, "it involves a judicial construction by the Supreme Court of the United States of a clause of the Federal constitution, and it is, therefore, binding on this court." . See also *Ex parte Murray*, 93 Ala 78 ; *Ware v. Hamilton Brown Shoe Co.*, 92 Ala. 145. We are of opinion that the principle determined in *Robbins' Case*, and those reaffirming it, applies to the present case ; and it results that the judgment of conviction must be reversed, and as no conviction could be had on the agreed facts, a judgment will be here rendered discharging the defendant.

Reversed and rendered.