CHICAGO—FIRST DISTRICT—DECEMBER, 1922.   255

Linehan et al. v. City of Chicago et al., 227 Ill. App. 255.

## J. R. Linehan, R. W. McGarry, Peter Peterson, Henry Landesberg and George Tisch, Appellees, v. City of Chicago, William Hale Thompson, Charles C. Fitzmorris and A. W. Haack, Appellants.

### Gen. No. 27,813.

1. EQUITY—*when bill for injunction is not multifarious.* A bill, brought by several manufacturers' agents on behalf of all persons similarly situated and affected, to enjoin the attempted enforcement of an ordinance requiring that licenses be obtained for carrying on the business of "merchandise brokers or manufacturers' agents," is not multifarious in joining parties and persons differently and severally interested in the ordinance, even though each of the complainants represents a single business concern from without the city, where it is alleged there are 7,500 manufacturers' agents having offices in the city in question engaged in similar business and that upwards of 5,000 prosecutions involving the same rights and defenses will result if the injunction is not granted and that the ordinance affects all such persons alike.

2. INJUNCTIONS—*sufficiency of showing of irreparable injury from enforcement of license ordinance.* A bill, to enjoin the enforcement of an ordinance imposing a license upon all manufacturers' agents within the city, states facts showing that the enforcement of the ordinance will result in irreparable injury to the complainants and all other manufacturers' agents where it is alleged that process has been issued requiring complainants' appearance in court, in default of which they will be arrested, that the city officers have threatened to arrest 7,500 manufacturers' agents in the city if they do not comply with the ordinance and that they will be prevented from carrying on their business, and that the ordinance is void and unenforceable.

3. BROKERS—*"manufacturers' agents" as brokers within meaning of licensing act.* Selling agents representing particular nonresident manufacturers are not brokers within the meaning of Cities and Villages Act, art. 5, subsec. 91, Cahill's Ill. St. ch. 24, ¶ 65, subsec. 91, giving cities the right to tax, "license" and regulate brokers, where it appears that each of such selling agents has a permanent connection with the manufacturer represented by him and with that manufacturer only, that none of such agents holds himself out to represent manufacturers generally or as a broker and that none of such agents accepts or places orders for other manufacturers or

256        Appellate Courts of Illinois.

Linehan et al. v. City of Chicago et al., 227 Ill. App. 255.

industries than those with which he has permanent and continued agencies.

4. Municipal corporations—*right to license manufacturers' agents as within police power.* An ordinance requiring all man-ufacturers' agents to obtain licenses as a condition precedent to operating within a city is not within the delegated police power of a city and is invalid.

Appeal by defendants from the Circuit Court of Cook county; the Hon. Hugo M. Friend, Judge, presiding. Heard in this court at the March term, 1922. Affirmed. Opinion filed December 11, 1922. *Certiorari* denied by Supreme Court (making opinion final).

Samuel A. Ettelson, for appellants; Leon Horn-stein, Thaddeus Kuflewski and Cora B. Hirtzel, of counsel.

Gottlieb & Markheim, for appellees; Harry Mark-heim and Herbert A. Friedlich, of counsel.

Mr. Presiding Justice McSurely delivered the opinion of the court.

This is an appeal from a decree of the circuit court perpetually enjoining the enforcement of an ordinance of the City of Chicago requiring that licenses be obtained for the conducting of the "business of merchandise brokers or manufacturers' agents," upon the ground that the ordinance was void and unenforceable.

The ordinance is claimed to be within the power granted by the Cities and Villages Act, ch. 24, art. 5, subsec. 91 [Cahill's Ill. St. ch. 24, ¶ 65, subsec. 91], by which the city is granted power "to tax, license and regulate  *  *  *  money changers and brokers."

The complainants style themselves manufacturers' and merchandise agents, and the bill is brought on behalf of all persons similarly situated and injuriously affected by the attempted enforcement of the ordinance. Defendants filed a general demurrer, which was overruled, and electing to stand upon their demurrer the permanent injunction was granted from which they appeal.

It is first suggested by defendants that the bill is multifarious in joining parties and persons all differently and severally interested in the ordinance complained of.

The bill sets forth that four of the complainants are manufacturers' agents, having offices in the City of Chicago, and that each represents a single business concern in the east; that the business of each of these is to obtain orders for the merchandise manufactured by the one concern which they respectively represent, and that each receives a commission based upon the amount of orders taken by him. These orders are filled and shipped to the various customers from the factories of the manufacurers. Each complainant devotes his entire time and attention to selling the merchandise of one manufacturer only, except the complainant Tisch, who represents about five manufacturers and devotes all of his time to obtaining orders for these and does not represent or seek to represent any other manufacturers. The bill alleges that there are over 7,500 manufacturers' agents having offices in the City of Chicago engaged in similar business. The bill also alleged that upwards of 5,000 prosecutions against different persons, all involving the same rights and defenses, would result if the injunction prayed for were not granted; that if the ordinance is valid it is valid against all of such persons, and if it is invalid, all such persons would be relieved from prosecution for violation of the ordinance. Multifariousness may be defined as the improper joining of distinct and independent matters in one bill or the improper joinder of parties not connected with the controversy in its proper and legitimate scope. It is difficult to conceive of a bill less open to this charge than the present one. It would be inequitable to require the 7,500 persons alleged in the bill to be affected by this ordinance to conduct individual and several defenses, when their rights may be determined in a single suit.

Courts of equity will always aim to administer relief in a single suit and will allow great liberality in joining all parties interested alike in the same right, and where the relief to be granted against each is of the same general character. Among the many cases giving support to this view are *Northwestern University v. Wesley Memorial Hospital,* 290 Ill. 205; *King v. Rice,* 285 Ill. 123; *First Nat. Bank of Lincoln v. Starkey,* 268 Ill. 22. Cases precisely in point are *Wilkie v. City of Chicago,* 188 Ill. 444; *City of Chicago v. Collins,* 175 Ill. 445; *Spiegler v. City of Chicago,* 216 Ill. 114; *Clark Teachers' Agency v. City of Chicago,* 220 Ill. App. 319.

It is said that the bill does not set up facts showing that the enforcement of the ordinance will result in an irreparable injury to complainants and all other persons similarly situated. The bill alleges that process has been issued requiring complainants to appear in court, in default of which they will be arrested, and that the license enforcing officers of the city have threatened to arrest upwards of 7,500 manufacturers' agents if they do not comply with the ordinance, and that they will be prevented thereby from carrying on their business. It is not a sufficient answer to say that the business of the complainants will not be injured if the license fee is paid. This is begging the question, for if the ordinance is void and unenforceable, arrest and prosecution will work an irreparable injury to the parties concerned, as tending, without right, to prevent them from engaging in a lawful business. It has been held that the right to conduct a lawful business is a property right. *International News Service v. Associated Press,* 248 U. S. 215; *Truax v. Raich,* 239 U. S. 33. A court of equity should protect this right from improper and unlawful interferences.

Are the complainants and other parties similarly situated "brokers" within the perview of subsection 91, art. 5, of the Cities and Villages Act, which gives

cities the right "to tax, license and regulate   *   *   *
brokers"? We hold that they are not. They are sell-
ing agents of particular manufacturers whom they
represent, and each has a permanent connection with
such manufacturer and with that person or persons
only. None holds himself out to represent manufac-
turers generally. The bill alleges that "none of the
manufacturers' agents aforesaid represents himself
or itself as a broker, or accepts or places orders for
any other manufacturers or industries than those with
which he has permanent and continuing agencies or
other arrangements as aforesaid."

"Brokers" in the ordinary acceptance and meaning
of the word, designate persons who solicit business
generally and represent any parties who may come to
them. They are sometimes referred to as middlemen
or negotiators of contracts or bargains between others.
2 Amer. and Eng. Ency. of Law, page 571; Story on
Agencies (9th Ed.), sec. 28. The distinction between
an agent representing a permanent, particular com-
pany, and a broker representing customers generally
has been pointed out and followed in many cases. In
*McKinney v. City of Alton*, 41 Ill. App. 508, it was
sought to impose a license fee on insurance agents
under subsection 91 in question. It was there held
that such agents are not brokers because they "sus-
tain a fixed and permanent relation to the companies
they represent," and do not solicit business for others.
To the same effect is *City of East St. Louis v. Brenner*,
59 Ill. App. 604, where the court aptly said of an in-
surance agent: "He represents only one party as an
agent, like any other solicitor or drummer, who trav-
els, seeking to build up trade. The business of a
'broker' is to represent all parties, buyers, or sellers,
in his line." This same distinction was observed in
*Braun v. City of Chicago*, 110 Ill. 186, where a broker
sold produce on a percentage for whoever employed

him. The same is true of *Banta v. City of Chicago,* 172 Ill. 204, where the brokers were characterized as "engaged generally in business as negotiators of contracts and bargains between others." This distinction has been observed in many other cases which might be cited, and none of the cases cited by defendants holds to the contrary. We are of the opinion that the bill set up facts showing that complainants and other persons in like business were merchandise or manufacturers' agents and not "brokers" within the meaning of subsection 91, aforesaid.

"The settled rule is that statutes granting powers to municipal corporations are to be strictly construed, and any fair and reasonable doubt as to the existence of such powers is resolved against the municipal corporation claiming the right to exercise them. A city having no power, except by delegation from the General Assembly, to license any occupation or require the payment of a tax for the privilege of engaging in it, the power must be expressly granted in the charter or be a necessary incident to a power so granted." *Potson v. City of Chicago,* 304 Ill. 222.

The ordinance in question is not within the delegated police power of the municipality. To regulate the business of manufacturers' agents is not granted under any of the ordinary police powers, and the legislature has not delegated to cities and villages the entire police power of the State. *City of Chicago v. M. & M. Hotel Co.,* 248 Ill. 264; *Stoessand v. Frank,* 283 Ill. 271; *City of Chicago v. O'Brien,* 268 Ill. 228; *People v. Village of Oak Park,* 268 Ill. 256.

"The express enumeration of certain occupations or businesses in the statute over which the municipalities are given control is by a well-known canon of construction an exclusion of all other occupations. * * * It was not the intention of the legislature to confer unrestrained and unlimited police power upon municipalities." *People v. City of Chicago,* 261 Ill. 16.

We conclude that the bill made a proper case for

the exercise of the injunctional powers of the court of equity, that the demurrer thereto was properly overruled, and the decree is therefore affirmed.

*Affirmed.*

DEVER and MATCHETT, JJ., concur..