## Jones *v.* Pittsburgh, Appellant.

Argued April 15, 1954. Before HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES, P. J., absent).

*J. Frank McKenna, Jr.,* City Solicitor, with him *Robert E. Engel,* Assistant City Solicitor, for City of Pittsburgh, appellant.

*Oscar G. Peterson,* with him *Niles Anderson,* Assistant Solicitors and *Mortimer B. Lesher,* Solicitor, for Pittsburgh School District, appellant.

*John B. Nicklas, Jr.,* with him *James P. Gill* and *McCrady & Nicklas,* for appellee.

OPINION BY ERVIN, J., July 13, 1954:

Plaintiff brought a suit in equity to restrain the City of Pittsburgh and James P. Kirk, Treasurer, from claiming and collecting mercantile taxes on gross commissions received by him in his Pittsburgh office, and also appealed from the deficiency claim of the School District of the City of Pittsburgh and James P. Kirk,

Treasurer, for mercantile taxes computed on the same basis. Both actions were consolidated for trial in the lower court which enjoined the City from attempting to collect the assessment and sustained the appeal from the deficiency claim of the School District. The City and School District filed exceptions, which, after argument, were dismissed by the court in banc. These appeals followed.

The fundamental question raised by these appeals is whether the appellee is a "merchandise broker" within the purview of the Mercantile Tax Ordinance of the City of Pittsburgh and the tax imposed by the School District of the City of Pittsburgh.

Pursuant to the power given in the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1, the City of Pittsburgh enacted its Mercantile Tax Ordinance No. 488, approved December 1, 1947. In accordance with the Act of June 20, 1947 (No. 320), P. L. 745, 24 PS §582.1, the School District imposed a similar tax. The provisions of Ordinance No. 488 and Act No. 320 are identical except as to rate. The City ordinance provides for a tax of one mill on gross receipts of wholesale dealers in and vendors of goods, wares and merchandise in the City, and a tax of one mill on gross commissions (as distinguished from gross sales) of certain types of brokers, including merchandise brokers. The rate of the School District Tax is one-half of one mill on gross receipts of wholesale dealers and vendors and one-half of one mill on gross commission of brokers.

"Broker" is defined in the City's Mercantile Tax Ordinance No. 488 of 1947, as amended by Ordinance No. 184 of 1948, as follows: " 'Broker' shall mean any merchandise broker, factor or commission merchant, but shall not include any stock broker, bill broker, note broker, exchange broker, real estate broker or

agent, or pawnbroker." Act No. 320 of June 20, 1947, P. L. 745, 24 PS §582.1(6), defines the term as follows: " 'Broker' shall mean any stock broker, bill broker, note broker, exchange broker, merchandise broker, factor, commission merchant, real estate broker or agent and pawnbroker."

The facts, which are not in dispute, are well summarized in the following portion of the opinion of the learned trial judge: "Plaintiff is what is known as a manufacturers' agent, sometimes called a manufacturers' representative, district representative, or sales agent. He has permanent contractual relations, either written or oral, with each of the ten manufacturers whom he represents. All but one of these firms are located outside of the Commonwealth of Pennsylvania, and none of them is located in the City of Pittsburgh. In the phone book, the principal firms list his office as their local office. They supply him with calling cards and letterheads for their various firms.

"Plaintiff operates in a given geographical district for each of the firms which he represents. These districts all roughly cover Western Pennsylvania, Northern West Virginia, and a few towns along the Ohio border. The firms all produce goods and wares in the same general field of merchandise, but each firm produces different products, so that they are in no way competitors of each other. Plaintiff and his salesmen call upon customers in the various districts with samples, displays, catalogues, and point-of-sale literature. They solicit orders for their principals. The orders either go directly to the principal firms or are forwarded there from the Harold G. Jones Company office, which retains an office copy of the order and sends the original to the manufacturer. The Harold G. Jones Company receives its compensation in the form of a commission on all of the goods ordered from

each principal from within the Harold G. Jones Company's territory, regardless of whether or not the orders came through the efforts of the Harold G. Jones Company.

"Plaintiff employs two salesmen to aid him in soliciting orders throughout the district. They each receive 50% of the commissions received from the principal in their territories, plus travelling expenses. He employs three women in his office, one inside salesman who receives 8% of the gross commissions received by the office, and two stenographers.

"When Plaintiff forwards an order to one of his manufacturers, the Harold G. Jones Company has nothing more to do with it except that at the end of the month, each principal sends a statement to plaintiff with commissions and a record of each shipment. When one of the principal manufacturers receives an order, he can either accept or reject it. The Harold G. Jones Company does not have the power to bind its principals. If the firm accepts the order, it ships the goods directly to the purchaser. It also bills the purchaser directly. Plaintiff receives no payments from customers, but only receives the commissions from the principals at the end of the month. No merchandise is received on consignment or handled in any way by the Harold G. Jones Company. Plaintiff's only function is to solicit orders for the firms with which he has permanent arrangements. He cannot accept the business of a manufacturer who competes with one of his present principals without the consent of that principal. He therefore does not hold himself out to the public or to manufacturers generally as being willing to accept any business which might be offered to him. He limits his business to ten manufacturing concerns with some of which he has been doing business for up to twenty-seven years."

We are all agreed that on the basis of the facts outlined supra appellee is not a broker within the meaning of that term as employed in the Mercantile Tax Ordinance of the City and Act No. 320 governing the tax levied by the School District and is therefore not subject to tax on his commissions. Though a broker is defined as one who is engaged for others, on a commission, to negotiate contracts relative to property with the custody of which he has no concern, 12 C.J.S. Brokers, §1a; and merchandise brokers are defined as those who buy and sell goods, and negotiate between the buyer and seller, but without having the custody of the property, Vol. 27, WORDS AND PHRASES, PERM. ED. "MERCHANDISE BROKER"; the facts in the instant case clearly reveal important differences in the relationship of appellee with those whom he represents and in his method of operations, which clearly distinguish him from a broker as that term is used in the mercantile tax laws and as it is construed in ordinary commercial usage. In the first place a merchandise broker holds himself out to the public or to manufacturers generally as offering his services in selling their product. Secondly, a broker frequently acts in a dual capacity in consummating or negotiating a sale—acting as a representative of both parties to the transaction. In the instant case appellee does not hold himself out to serve the general public but is the exclusive agent for the manufacturers he represents. These distinctions are described in 12 C. J. S. BROKERS, §3, as follows: "A broker is distinguished from an agent, in that a broker holds himself out for employment by others, and acts as an intermediate negotiator between the parties to a transaction, and in a sense is the agent of both parties, whereas the element of exclusiveness of representation of the principal by which he is employed enters into the employment of an agent." Thirdly, brokers

generally have authority to make binding contracts for those whom they represent but appellee has no such power. Appellee may not make a contract or in any way bind the manufacturers whom he represents. Fourth, though he is paid on a commission basis such commission is based on a percentage of the total sales invoiced in his territory less returns and not on the basis of each order solicited or obtained nor on the basis of sales contracts negotiated. That compensation on a commission basis is not determinative of appellee's status as a broker is well illustrated in *Hamberger v. Marcus*, 157 Pa. 133, 139, 27 A. 681, where it is stated: "A traveling salesman who exhibits samples of and takes orders from purchasers for his employer's goods is not, in a technical or popular sense, a broker, or factor, although he may be compensated for his services by commissions on the sales so effected by him." Finally, appellee has represented nine manufacturing firms for periods ranging from ten to twenty-seven years and under the terms of his contractual arrangements with these firms he has always been described as "agent," "representative," or "district representative"—never as a broker.

In *Linehan v. City of Chicago et al.*, 227 Ill. App. 255, a case similar to the one now before us and involving the distinction between brokers and manufacturers representatives, the Illinois Appellate Court stated: "Are the complainants and other parties similarly situated 'brokers' within the perview (sic) of subsection 91, art. 5, of the Cities and Villages Act, which gives cities the right 'to tax, license and regulate . . . brokers'? We hold that they are not. They are selling agents of particular manufacturers whom they represent, and each has a permanent connection with such manufacturer and with that person or persons only. None holds himself out to represent manu-

facturers generally. The bill alleges that 'none of the manufacturers' agents aforesaid represents himself or itself as a broker, or accepts or places orders for any other manufacturers or industries than those with which he has permanent and continuing agencies or other arrangements as aforesaid.' "

In addition to the *Linehan* case, the lower court relied on *City of Chicago v. Dollarhide*, 255 Ill. App. 350. In that case the Dollarhide Company represented twelve out-of-state lumber mills. The company carried no stock. It handled no other principals but the twelve with whom it had permanent connections. All it did was solicit orders for the principals and forward them to the principals. It did not have the power to bind its principals. The merchandise was then shipped directly to the purchaser and the purchaser was billed directly. A commission on sales was received by the Dollarhide Company. The court there held that the agent was not a broker, stating at pages 357, 358: "The fact that the defendant represented a number of such mills does not change his position from a manufacturers' agent to a general broker . . . . The word 'broker' has a fixed, definite meaning, as defined by the authorities and *the character and attributes of a broker cannot be imposed by any ordinance in an attempt to make one a broker who is not a ·broker by definition in an ordinance. Defendant is not a broker, general or otherwise, but is a manufacturers' agent."* (Emphasis added)

Moreover, any doubt or uncertainty concerning appellee's classification as a broker within the purview of the mercantile tax laws here involved should be resolved in favor of appellee. Applicable and pertinent here is the following statement of Mr. Justice CHIDSEY in *Philadelphia School District v. Frankford Grocery Company*, 376 Pa. 542, 549, 103 A. 2d 738: "If the

clause be deemed uncertain or of doubtful meaning, it must be construed in favor of the taxpayer: Commonwealth v. Repplier Coal Company, 348 Pa. 372, 35 A. 2d 319. The grant by the Legislature of the right to levy taxes is to be strictly construed and is not to be extended by implication: Murray et ux. v. Philadelphia et al., 364 Pa. 157, 163, 71 A. 2d 280; Breitinger v. Philadelphia et al., supra."

Furthermore, though the city ordinance lists nine different kinds of brokers or agents the terms "manufacturers representative," "manufacturers agent," "district representative" or "sales agent" are omitted. As stated by Judge (now Mr. Justice) ARNOLD in *United Laundries, Inc., et al. v. Board of Property Assessment, Appeals and Review,* 161 Pa. Superior Ct. 412, 415, 54 A. 2d 912: "It has long been the law of Pennsylvania that a tax assessment must depend for its validity upon a statute, and that such statute will not be extended, by construction, to things not directly named or described therein. There is no taxation by implication." See *Volpe Appeal,* 85 D. & C. 21.

We accordingly affirm the final orders in both cases. Costs on the appellants.