105 So.2d 439

**STATE of Alabama**
**v.**
**W. E. McKENNEY.**
**6 Div. 30.**

Supreme Court of Alabama.
July 24, 1958.
Rehearing Denied Sept. 25, 1958.

**166**

John Patterson, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

Adams & Adams, Jos. W. Adams, Birmingham, for appellee.

COLEMAN, Justice.

The single question in this case is whether or not the appellee is a "merchandise broker" within the meaning of § 493 of Title 51, Code 1940, which was amended by Act No. 418, approved July 12, 1943, to read as follows:

"Each commission merchant or merchandise broker shall pay one State license of Twenty-five ($25.00) Dollars and one county license of Twelve and 50/100 ($12.50) Dollars. Such payment shall be made in the county in which such commission merchant or merchandise broker maintains his principal place of business. Such license shall authorize such commission merchant or merchandise broker to do business in any county of the State without the payment of any further State or county license. The payment of the license in one county of the State as evidenced by the license certificate of the Probate Judge shall be sufficient." General Acts 1943, Regular Session, page 384.

It appears that § 493 of Title 51 was originally enacted as a part of the General Revenue Act of 1935. See § 348, Schedule 29 of that act on page 450 of 1935 General Acts, Regular Session. Schedule 29 was carried into the Code of 1940 as § 493 of Title 51 without substantial change, and as codified reads as follows:

"§ 493. Commission merchants.— For each commission merchant or merchandise broker in cities of fifty thousand inhabitants or over, fifty dollars; in cities and towns of twenty-five thousand and less than fifty thousand inhabitants, thirty-five dollars; in cities

and towns of ten thousand and less than twenty-five thousand inhabitants, twenty-five dollars; in cities and towns of five thousand and less than ten thousand inhabitants, fifteen dollars; in cities and towns under five thousand inhabitants, whether incorporated or not, ten dollars."

The State Department of Revenue assessed the appellee for license tax as a merchandise broker for the period beginning October 1, 1952, and ending September 30, 1955. Appellee appealed to the Circuit Court of Jefferson County, Alabama, In Equity, as provided by law. That court, after taking testimony ore tenus, reversed the Department of Revenue and adjudged and decreed that the appellee is not a "commission merchant or merchandise broker" within the meaning of § 493, Title 51, Code 1940. From that decree of the circuit court, the State has appealed to the Supreme Court.

As we read the record, there is no conflict of any consequence as to the facts. The dispute between appellant and appellee appears to be a conflict as to the correct conclusion to be drawn from the facts.

The appellee at his own expense maintained an office in the city of Birmingham. He was engaged in soliciting orders for merchandise manufactured by several principals and sold to retailers within and without the State of Alabama. We understand that certain of these principals were residents of the State of Alabama and that certain others were nonresidents. Appellant states in brief that no question of interstate commerce is involved and we have so considered the case inasmuch as appellee does not contend to the contrary.

The appellee makes the following statement of facts:

"The appellee has been what is commonly known as a Manufacturer's Agent for a comparatively short period of time. He was formerly employed by the Birmingham Range Company and in 1945 he resigned his position with the Birmingham Range Company to become a Manufacturer's Agent. His first and largest account was offered him in 1945, the year in which he began operation, by Mr. Martin of the Martin factories. The Martin factories consist of three separate corporations who operate as a unit for distribution purposes for stoves and heaters. He was assigned as a Martin salesman in Georgia and all of Alabama except the northwest corner of Alabama. He was originally on a salary basis with Martin but later, and during the period of time covered by the assessment, he was on a commission basis. At the time of the hearing before the Circuit Court of Jefferson County, Alabama *he represented five manufacturers as their agent.* However, as pointed out in Appellant's brief he did in an effort to build up his income and establish some stability to his business represent certain other manufacturers as their selling agent all of whom sold none competing products." (Emphasis supplied.)

Appellant's brief states:

" * * * In this connection, the appellee represented some ten or more principals at one time or another during the period involved in this case, for whom he solicited orders for the sale of their products from said buyers located in this State. * * *"

Continuing further, appellee says:

"When appellee first began as a manufacturer's agent he operated from his home but later on he established an office in the Comer Building which office had a sign designating the occupant thereof as W. E. McKenney Manufacturer's Agent. About half of appellee's time is spent in the Birmingham area and about half of his time is spent working his territory in other parts of Alabama and in part of Georgia. The appellee employs one person in his office to answer the phone

and write letters. Copies of correspondence sent out and received from his manufacturers are kept in his office along with invoices received showing his commission statements.

"Appellee works under the complete jurisdiction of the factories he represents and is furnished advertising material by the manufacturers and envelopes and must conform to their sales policy. (T. pp. 24, 25, 57.)

"If an inquiry is received by one of the manufacturers from a customer in the territory assigned to appellee the manufacturer would write the customer a letter with a carbon copy to appellee advising the customer that Mr. McKenney would call upon them in the near future (T. p. 25). Thereupon the appellee would contact the customer and solicit an order. Appellee was not engaged in the business of negotiating contracts but was engaged in the business of soliciting orders for his manufacturer's products at the price established by the manufacturers (T. p. 45).

"If the appellee's solicitations resulted in the procurement of an order the order was then forwarded to the factory where it was subject to their approval for credit purposes and upon filling the order appellee was paid a commission as previously agreed on between the appellee and the manufacturer. Appellee was the exclusive representative of the factories in the territory assigned to him and was paid a commission on all merchandise shipped in his territory whether he personally solicited the order or not. If the order was sent directly from the customer to the factory the appellee was nevertheless paid his commission on such shipment even though he knew nothing about such shipment. After appellee has secured an order for merchandise he often holds sales meetings with the dealer to whom the mer-

chandise was sold. At such sales meetings he was usually accompanied by the sales manager of the factory and at such sales meetings the appellee together with the sales manager of the factory would point out the advantages and proper function and design of the product sold (T. p. 24). Appellee has the duty to appoint exclusive dealers in his territory for the manufacturer's product if the manufacturer had never established an exclusive dealership in the area, then, of course, he was not permitted to establish another exclusive dealership (T. pp. 27, 42). The exclusive dealer set up was simply that the manufacturer would let one dealer handle its products in an assigned area.

"Appellee is asked to contact delinquent accounts in the territory assigned to him and request that the account be paid and on some occasions collected the money and turned it over to the factory. Appellee does not approve credit of the purchaser except in cases where a new customer is established and the shipment of a sample order is made. In such cases the manufacturer ships the order on appellee's recommendation (T. p. 65). He is directed by the manufacturer in keeping with their sales policy to spend his time with people who have an established credit rating in Dun and Bradstreet. Appellee confines his business to soliciting orders for the particular brand named products manufactured by his principal at the price fixed by the manufacturer. Appellee has nothing to do with fixing the price of the product and if a competing line is suggested he must point out the merits of his manufacturer's product and thereby procure the order rather than negotiate on the price (T. p. 29). He does not hold himself out as a broker. He presents himself to the dealer as the salesman of the different manufacturers he represents. In the trade he

is known as the salesman for Phil Rich Fan Company in selling fans—the salesman for the Martin Company in selling stoves and heaters—the salesman of the Jasper Cedar Robe Company in selling Cedar robes (T. p. 30, T. p. 33, T. p. 47, T. p. 49, T. p. 74).

"Appellee does not hire any salesmen but he does in some instances permit other salesmen to solicit orders in remote territory assigned to him and shares the commission with such salesmen (T. p. 51)."

Appellant's Exhibit B in the record shows that appellee, in taking orders for all principals (except one) uses appellee's own order form, on which is printed: "W. E. McKenney and Associates." The name and address of the particular principal to whom the order is directed is written on blank lines provided on the order form. While we are not to be understood as holding that the use of an order form of this type determines the status of appellee, it is mentioned as descriptive of the manner in which appellee conducted his business.

■ Appellee argues for application of the rule that a chancellor's findings of fact on oral testimony given before him are presumed to be correct. 2A Ala.Dig., Appeal and Error, ☞931(1) b. In the instant case, however, there is no substantial conflict in the evidence bearing upon the material issue here presented. "Therefore, there is no real ground for the application of the rule, here prevailing, of the presumption of verity to be indulged as to the finding of the lower court on the evidence offered and noted on the hearing." Esco v. Davidson, 238 Ala. 653, 655, 193 So. 308, 310; 2A Ala.Dig., Appeal and Error, ☞931(1) d.

In the case of Stratford v. City Council of Montgomery, 110 Ala. 619, 625, 626, 20 So. 127, 128, this court construed the meaning of the words "local commercial broker" as used in a city ordinance and defined a "broker" as follows:

"* * * A 'broker' is defined as 'an agent employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation for a compensation commonly called "brokerage." '—Story on Agency, (8th ed.), § 28. Every broker is, in a sense, an agent; but every agent is not a broker. There are, however, so many incidents common to both relations that it is difficult to define the precise line of demarkation. We would say the idea of exclusiveness enters into an employment of agency, while with respect to brokers there is a holding out of one's self, generally, for employments in matters of 'trade, commerce, and navigation.' It is the business or calling of acting or of offering to act, generally, as distinguished from isolated employments, not induced by or resulting from the general business or calling. In determining whether particular facts constitute one an agent, strictly socalled, or a broker, the circumstance that the employments are many or few, cannot be made the controlling test. Capacity, means, and other incidents may operate as factors in reducing or increasing the number of clients and volume of business, without in the least changing the nature of the business. Applying these principles, we are of opinion that on the facts of this case, the defendant was 'a commercial broker.' * * * There was no agreement not to increase the number of his customers, no exclusion of his right to act for any who should employ him."

In two later cases, the words "merchandise broker" as contained in Schedule 29 of the Revenue Act of 1935 were construed. In State v. W. M. Meador & Co., Inc., 29 Ala.App. 450, 198 So. 163, the case was tried on an agreed statement of facts. The Court of Appeals held that the state was

entitled to recover the license required by statute under the statement of facts in that case.

On certiorari, 240 Ala. 164, 198 So. 166, under date of October 10, 1940, this court approved the *conclusion* reached by the Court of Appeals and denied the writ.

So far as we have been advised, the legislature has not undertaken to define a "merchandise broker" as that term is used in the licensing statute. We find, however, that in 1943, after the construction of that statute in State v. W. M. Meador & Co., Inc., supra, and also State v. Stein, 29 Ala.App. 565, 199 So. 11, the legislature amended § 493 of Title 51 to read as it is set out above in this opinion. The amendment changed the amount to be paid for a license, but did not make any change in the words used to describe the taxpayer who is due to pay the license.

> "* * * Authorities are legion announcing the rule that 'unless a contrary intent appears, the re-enactment of a statute which has been judicially construed, is an adoption of the construction.' Ex parte State ex rel. Lawson, 237 Ala. 591, 593, 188 So. 242, 244; Vol. 18, Ala.Dig., Statutes, ☞223.5 (4) (6)." United States Steel Corporation v. Goodwin, Ala., 104 So.2d 333, 334.

■ Under the foregoing rule of construction, the definition or description of a "merchandise broker" approved in the Meador and Stein cases, supra, is the same definition due to be applied in the instant case to determine whether or not the appellee is a "merchandise broker."

In both the Meador and Stein cases, supra, the agreed statement of facts contained the following stipulations:

> "The defendant does not hold itself open as willing to represent any principals unconditionally, but will only represent such principals as are satisfactory to it and, as a matter of fact, constantly refuses to represent new principals." 29 Ala.App. 450, 451, 198 So. 163, 164.

After carefully comparing the statement of facts in the Meador case and the instant case, we find only three differences.

First, in the Meador case, supra, the facts stipulated that on occasion defendant would procure an order for less than a carload lot of a commodity and that in such case defendant would order a carload of that particular commodity shipped to the jobber who had ordered the largest portion of such car or to the defendant. Defendant would thereafter dispose of the unsold portion of the car either before or after its arrival. In the instant case, the appellee never has custody of any merchandise belonging to his principal. We do not, however, consider that this difference in the facts has any effect on the result. The only effect of the custody of the merchandise would be to make the appellee a "commission merchant" instead of a "merchandise broker." In Leibold v. Brown, 260 Ala. 354, 360, 71 So.2d 7, 12, it was said:

> "* * * Appellant is not a 'commission merchant', in that, he is not entrusted with the possession of goods to sell on commission. 12 C.J.S. Brokers § 2, page 8."

In the instant case, the appellant concedes that appellee, McKenney, is not a "commission merchant."

The second difference is that in the Meador case, supra, the taxpayer received a commission only on goods which he sold and did not receive a commission on goods sold by an order which he did not solicit, as we understand the opinion. In the instant case, the appellee receives a commission on all goods sold in his territory by his principal although he did not solicit the order and knew nothing about it. We do not think, however, that this additional compensation changes the status of appellee from broker to that of an agent who is not a broker. The difference here noted merely constitutes a difference in the method of compensating appellee and does not trans-

form him into an agent who is not a broker.

The third difference, as contended by appellee, is that in the Meador case, supra, the agent there was, under his contract with his principals, at liberty to represent any and all principals as he might see fit, even though such principals competed with each other; whereas, in the instant case, according to the contentions of appellee, the appellee is not at liberty to represent any and all principals suitable to him, but is permitted to represent only those additional principals who do not compete with the particular products sold by one of the principals already represented by the appellee.

The trial court appears to rest its decree on this last difference in the facts and says in its opinion:

"* * * In the opinion of the Court, the relationship of appellant to each manufacturer possessed the necessary element of 'exclusiveness of representation' referred to in the case of Stratford v. City Council of Montgomery, 110 Ala. 619, 27 So. 127, which was cited by both parties. * *"

In discussing the meaning of "exclusive" this court has said:

"A synonym for the word 'exclusive' is the word 'sole.' Webster's New International Dictionary. * * *" State v. Bridges, 246 Ala. 486, 491, 21 So.2d 316, 319.

If appellee represented five principals at the same time and was at liberty to represent others who did not sell competing products, can it be fairly said that he was the "exclusive" agent of any one of the five, or that his right to represent a principal other than one of the five had been "excluded"?

We think not. Even if appellee's contentions be accepted as true, there was only a restriction as to those whom appellee could represent but that is not an exclusion of his right to represent others. During the period in question, appellee represented at least five principals and possibly ten of them. This does not amount to an "agreement not to increase the number of his customers" and is not an "exclusion of the right to act for" other principals who might be satisfactory to him. Stratford v. City Council of Montgomery, supra. We, therefore, conclude that under the facts appellee was a merchandise broker and distinguished from an agent who is not a broker.

We have carefully considered all the authorities cited by appellee. Some of the cases cited, notably from Pennsylvania and Illinois, appear to be contrary to our holding. We are nevertheless convinced that under the Meador and Stein cases, supra, our conclusion is correct.

We do not think the opinion in Leibold v. Brown, supra, is in any wise in conflict with our present holding. It is to be noted in that case that the question was "whether or not appellant as a commission merchant or merchandise broker is liable for a state license * * * by reason of the interstate nature of his business." While the term "manufacturer's agent" is mentioned in the opinion as an allegation of the bill, we do not think that opinion can be taken as holding that an agent who represents manufacturers is not, for that reason, a broker. An agent who represents manufacturers can be a broker as much in every sense as an agent who represents wholesalers or retailers or any other sort of principals.

The decree appealed from is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, SIMPSON, GOODWYN and MERRILL, JJ., concur.

On Application for Rehearing

COLEMAN, Justice.

On application for rehearing, appellee differs with our conclusion on original de-

172

liverance. We are of opinion that that conclusion is correct and that no useful purpose would be served by enlarging thereon.

Appellee also requests that we say whether or not an agent in a factual situation different from that set out in the record in this case is a merchandise broker within the meaning of the statute with which this case is concerned. This court has said:

"If we were to express an opinion based on facts not shown by the record in this case, that opinion would be dicta and would not be binding in subsequent cases. This court has quoted with approval the following statement of this rule:

" '* * * It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. * * *' State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 341, 186 So. 487, 496, 121 A.L.R. 283.

"When another case involving different facts comes before us, it will be our duty to decide that case according to the law applicable to the facts then presented." Wilkinson v. Rowe, 266 Ala. 675, 680, 681, 98 So.2d 435, 440.

At appellee's request, we cite the Pennsylvania and Illinois cases which appear to be contrary to our holding in the case at bar: Jones v. City of Pittsburgh, 176 Pa.Super. 154, 106 A.2d 892; City of Chicago v. Dollarhide, 255 Ill.App. 350; Linehan v. City of Chicago, 227 Ill.App. 255.

Opinion extended. Application overruled.

LIVINGSTON, C. J., and LAWSON, SIMPSON, GOODWYN and MERRILL, JJ., concur.