Cambria Township School District *v.* Cambria County Legion Recreation Association, Appellant.

Argued April 15, 1963. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P.J., absent).

*Paul D. Larimer,* with him *Englehart, Larimer & Englehart,* for appellant.

*Edward F. Peduzzi,* with him *Myers, Taylor & Peduzzi,* for appellee.

OPINION BY ERVIN, J., June 12, 1963:

The sole issue in this appeal is whether a school district may impose a tax on general admissions to a county fair.

On August 24, 1960 the School District of Cambria Township (hereinafter called "School District"), filed a complaint in mandamus to compel the defendant, Cambria County Legion Recreation Association (hereinafter called "Association"), to charge and collect a tax of 10 per centum on each and every admission fee that is charged by the Association to the general public for admission to the fairgrounds. The Association filed its answer and new matter and the plaintiff filed a reply to the new matter. Inasmuch as the county fair had already been held, the plaintiff and the defendant filed a stipulation as to the facts and agreed that the proceeding be considered in the nature of a proceeding for declaratory judgment. The court below decreed the tax to be valid. The Association appealed.

The Association argues that the School District may only tax admissions to *amusements,* and since the fair is an agricultural and horticultural as well as an industrial exhibition, it is not an amusement and, therefore, a tax on admissions to its fairgrounds is invalid. Municipalities and school districts only have the power to enact tax ordinances or resolutions which are authorized by an act of the legislature: *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 171, 87 A. 2d 480; *Fischer v. Pittsburgh,* 178 Pa. Superior Ct. 16, 112 A. 2d 814, affirmed 383 Pa. 138, 118 A. 2d 157. The power to levy taxes must be strictly construed and

in case of a reasonable doubt, the construction should be against the taxing body: *Tax Review Board v. Elster & Prager*, 406 Pa. 543, 178 A. 2d 611; *Jones v. Pittsburgh*, 176 Pa. Superior Ct. 154, 106 A. 2d 892.

The Statutory Construction Act, 46 PS §558, provides: "All provisions of a law of the classes hereafter enumerated shall be strictly construed: . . . (3) Provisions imposing taxes; . . . ."

The power of the School District to levy this tax must be found in the following language of the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851: "The duly constituted authorities of . . . school districts of the third class . . . may, in their discretion, by . . . resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine . . . on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions, except that such local authorities shall not have authority by virtue of this act (1) to levy, assess and collect or provide for the levying, assessment and collection of any tax . . . on a privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a State tax or license fee; or . . . (3) except on sales of admission to places of amusement . . ., to levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a State tax. . . ."

As stated in the original statute (see Act of 1947, P. L. 1145, at page 1146) : "It is the intention of this section to confer upon such political subdivision the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now tax or license, subject only to the foregoing provision that any tax upon a subject which the Commonwealth does here-

after tax or license shall automatically terminate at the end of the current fiscal year of the political sub-division." This act is commonly known as the "tax anything law." A tax upon the privilege of engaging in an amusement is a tax upon a privilege and not up-on a place: *Fierro v. Williamsport*, 384 Pa. 568, 120 A. 2d 889. Similarly, a tax upon the privilege of attend-ing a fair is a tax upon a privilege and not upon the fairgrounds itself. With these principles in mind, let us consider the facts of this case.

In May of 1960 the School District enacted a resolu-tion imposing a 10 per cent tax on "every admission ticket, fee or privilege to attend or engage in any amusement, entertainment, moving picture show, cir-cus, carnival, fair grounds, athletic event, dance, musi-cale or concert, and all other forms of sport, recrea-tion, pastime, shows, exhibitions or events. . . ."[1]

---

[1] "BE IT RESOLVED by the Board of Directors of the School Dis-trict of the Township of Cambria, Cambria County, Pennsylvania, in regular meeting assembled, and it is hereby resolved by author-ity of the same, under the authority of the Act of June 25, 1947, P. L. 1145, and its amendments:

"The Resolution adopted by the School Directors of the Town-ship of Cambria on the 13th day of May, 1952, pursuant to author-ity contained in Act of Assembly of the Commonwealth of Penn-sylvania, approved June 25, 1947, P. L. 1145 and its amendments, is hereby re-enacted without substantial change and the same tax, and applicable provisions as hereinafter set forth, are hereby im-posed and become effective for the year beginning the first Mon-day of July, 1960, and ending the first Monday of July, 1961.

"The sum of ten (10%) per centum on each and every admis-sion ticket, fee or privilege to attend or engage in any amusement, entertainment, moving picture show, circus, carnival, fair grounds, athletic event, dance, musicale or concert, and all other forms of sport, recreation, pastime, shows, exhibitions or events, where an admission fee, donation, contribution or monetary charge of any character is required for admission from the general public or a limited or selected number thereof, during the year from the first Monday of July, 1960, to the first Monday of July, 1961.

Counsel for the Association argues that the School District's resolution defines and restricts the tax to a

"Provided, however, that this tax shall not apply to any amusement as specifically set forth above, undertaken by or under the auspices of the Parent-Teachers Association of the said School District.

"In the case of persons admitted free or at reduced rates to any place of amusement, at a time when and under circumstances under which an established price is charged to other persons, the tax imposed by this Resolution, as specifically set forth above, shall be computed on the established price charged to such persons of the same class for the same or similar accommodations, to be paid by the person so admitted.

"The Tax Collector of the Township of Cambria is hereby authorized and empowered to collect and receive the taxes, fines and penalties imposed by this Resolution and to make returns of funds collected for the School District. It shall also be his duty to keep a record showing the amount received by him and the date of receipt.

"The Tax Collector is hereby charged with the administration and enforcement of the provisions of this Resolution, and is hereby authorized and empowered, by and with the consent of the Solicitor of the said School District, to prescribe, adopt, promulgate and enforce rules and regulations relating to any matter pertaining to the administration and enforcement of this Resolution, including provisions for the re-examination and correction of returns, and payments alleged or found to be incorrect, or as to which an overpayment is claimed, or found to have occurred.

"The owner, officers or producer of any amusement specifically set forth above, is hereby made agent of the School District for the collections of said tax, and will make payment of such amounts collected to the Tax Collector on the dates hereinafter set forth. Said payments to be accompanied by a return on a form to be furnished by, or obtainable from the Tax Collector.

"The tax herein levied and imposed shall be due and payable by the owner or producer of any amusement herein set forth, on or before the 15th day of each month, for all taxes collected during the preceding month; provided, however, that if the amusement is transient or temporary, a return shall be made and the tax paid on demand of the Tax Collector.

"Upon failure of any owner or producer of any amusement more specifically set forth above, to make payment of the amounts col-

tax on admissions to places of *amusement* and that the county fair is not an amusement. The language of the

lected and due under this Resolution, a penalty of five (5%) per centum of the total amount due shall be imposed, and the unpaid balance shall bear interest at the rate of six (6%) per centum per annum.

"The Tax Collector is hereby authorized to sue for the recovery of taxes due and unpaid under this Resolution and to enforce such judgment therein obtained as provided by law for the enforcement of judgments of like amount. Where suit is brought for the recovery of any such tax, the person liable therefor, shall, in addition, be liable for the costs of collection and the penalties herein imposed.

"The Tax Collector is hereby authorized to inspect and examine either in person or by representative, the books, papers and records of any owner or producer of any amusement specifically set forth above, in order to verify the accuracy of any return made, or if no return was made, to ascertain the tax imposed by this Resolution. Every such owner or producer of any amusement is hereby directed and required to give to the said Tax Collector, or his duly authorized agent or employee, the means, facilities and opportunity for such examinations and investigations as are hereby authorized.

"Any owner, officer, or producer of any amusement as specifically set forth above, who shall fail, refuse or neglect to make any return required by this Resolution, or any owner, officers, or producer of any amusement who shall refuse to permit the Tax Collector, his agent or employee, to examine his books, records and papers, or who shall knowingly make any incomplete, false or fraudulent return, or who shall attempt to do anything whatever to avoid the full disclosure of the amount of earnings or profits to avoid payment of the whole, or any part of the tax, shall upon conviction thereof before a Justice of the Peace of the Township be subject to a fine or penalty of One Hundred ($100.00) Dollars and costs for each such offense, and in default of said fine and costs to undergo imprisonment for not more than thirty days. Said fine or penalty shall be in addition to any other penalty imposed by any other provisions of this Resolution.

"The Tax Collector shall receive, as compensation for the collection of all taxes and penalties herein imposed, with the exception of the fine as provided above, four (4%) per centum of all amounts collected.

taxing portion of the resolution which we are considering speaks in broad language. It provides for a tax of 10 per cent "on each and every admission ticket, fee or privilege to attend or engage in any amusement, entertainment, moving picture show, circus, carnival, fair grounds, athletic event, dance, musicale or concert, and all other forms of sport, recreation, pastime, shows, exhibitions or events. . . ." This includes a variety of activities which are not necessarily "amusements," and specifically includes admissions to fairgrounds. In a number of later sections of the resolution which relate to the administration and collection of the tax, the word "amusement" or "amusements" is used alone and it is argued by counsel for the Association that this restricts the tax to the admission to amusements only. We cannot agree with this argument. The language of the subsequent sections is not sufficiently limiting in its import to confine the resolution as a whole to admissions on amusements. As pointed out above, this language is used in sections relating to collections and administration only and its use was incidental to provisions relating to enforcement of the tax and it cannot cancel out the detailed description of the various taxable activities contained in earlier language of the resolution. The portion of the resolution which levies the tax very clearly places it upon not only amusements but many other things. In *Swartley v. Harris,* 351 Pa. 116, 119, 40 A. 2d 409, our Supreme Court said: "The

---

"The provisions of this Resolution shall not apply to any person or property as to whom or which it is beyond the legal power of the School District to impose the tax or duties herein provided.

"The provisions of this Resolution shall be severable, and it is the intention of the Board of Directors that, should any portion of this Resolution be declared unconstitutional, invalid or illegal, the remaining provisions shall continue to have full force and effect.

"This Resolution shall go into effect the first Monday of July, 1960."

language of a statute must be read in a sense which harmonizes with the subject matter and its general purpose and object. The general design and purpose of the law is to be kept in view and the statute given a fair and reasonable construction with a view to effecting its purpose and object, even if it be necessary, in so doing, to restrict somewhat the force of subsidiary provisions that otherwise would conflict with the paramount intent: 25 R.C.L. Sec. 253, page 1013; Pocono Manor Association et al. v. Allen et al., 337 Pa. 442, 12 A. 2d 32."

In *Keating v. White,* 141 Pa. Superior Ct. 495, 504, 15 A. 2d 396, Judge, now President Judge, RHODES said: "It is also a well-established principle that a determination of the true meaning of a statute requires a broad view of the act and a comparison of the doubtful words with the context of the law. New York Life Insurance Co. v. Guaranty Corporation, 321 Pa. 359, 184 A. 31. In the Guaranty Corporation case the Supreme Court (at pp. 362-3) referred to Endlich on the Interpretation of Statutes, p. 35, §27, as follows: 'The literal construction then, has in general, but a prima facie preference. To arrive at the real meaning, it is always necessary to take a broad general view of the act, so as to get an exact conception of its aim, scope and object. . . . The true meaning is to be found, not merely from the words of the act, but from the cause and necessity of its being made, from a comparison of its several parts and from extraneous circumstances; or by an examination of, and comparison of the doubtful words with, the context of the law, considering its reason and spirit, and the inducing cause of its enactment.' " See also to the same effect *New York Life Insurance Co. v. Guaranty Corporation,* 321 Pa. 359, 362, 184 A. 31.

Applying the above principles to the present case, having in mind that the express purpose of the legisla-

ture and of the School District was to secure revenue for the School District on admissions charged to certain activities, it is apparent that the choice of words in subsequent paragraphs after the tax levying paragraph should not be construed as defining or limiting the activities enumerated. While the use of the word "amusement" would tend to define all the activities as amusements, the general import of the resolution is to place a tax on admissions to activities other than amusements, such as sports activities, recreation activities or exhibitions; in fact, any type of an activity where an admission fee is charged or where any monetary donation or contribution is required for admission by the public. We are therefore of the opinion that the wording in the subsequent paragraphs of the resolution did not limit the entire resolution so that a tax upon amusements was the sole tax levied. We believe that it was the intention of the School District that the tax on admissions should cover all of the different types of activity mentioned in the tax levy portion of the resolution, including the specific item of admissions to *"fair grounds."* (Emphasis added)

Counsel for the Association also argues that the School District may not impose a tax upon admissions to a fairground because the Commonwealth of Pennsylvania and the County of Cambria make appropriations to the Association. Undoubtedly the purpose of the County and Commonwealth in making such appropriations was to encourage agricultural exhibitions. The acts of assembly authorizing the State and the County to appropriate funds for these purposes do not prohibit such appropriations because there are other activities on the fairgrounds. We assume that the members of the legislature were quite familiar with the fact that there are many more activities carried on at county fairs than just agricultural or horticultural exhibitions. The carnivals, rides, thrill shows, mercantile

exhibits, harness racing and concessionaires have for many years been an important part of the county fair. Without these other activities it is doubtful whether most fairs could exist. We could take judicial notice of the fact that as many or more people are drawn to county fairs by the above mentioned activities than are drawn by the agricultural and horticultural exhibitions. We see no reason why the State and the County should not appropriate money to promote and encourage agricultural and horticultural activities even though such activities are conducted on the same grounds and in close proximity to the many other activities above mentioned.

Counsel for the Association also places considerable reliance on the two lower court cases of *Dyberry Township v. Wayne County Agricultural Society, Inc.,* 86 Pa. D. & C. 188, and *Town of Bloomsburg v. Columbia County Agricultural, Horticultural & Mechanical Association,* an unreported opinion but a copy of which was furnished in an appendix to the appellant's brief. Neither of these cases is applicable to the present case. In both of these cases the portion of the resolution which levied the tax did so against amusements only and thereafter the word "amusement" was further defined. There was not, as there is in the present case, a levy against either fairgrounds or the admission to fairgrounds. In the present case the tax was upon the privilege exercised by fairgoers in attending the fair and not upon any privilege exercised by the Association or upon any of its property. It was a tax upon a "transaction or privilege" subject to local tax, whether it be a place of amusement or not. No evidence was produced to show that the State has taxed this subject and therefore the limitation in the enabling act is not applicable.

We are of the opinion that this was a valid tax.
Order affirmed.