Timberline Recreational Enterprises, Inc. t/d/b/a Granite Hill Family Campground et al., Appellants v. Highland Township and Gettysburg Area School District, Appellees.

Argued January 30, 1984, before Judges ROGERS, CRAIG and COLINS, sitting as a panel of three.

*David E. Lehman,* with him *Jessie L. Smith, Mc-Nees, Wallace & Nurick,* for appellants.

*Henry O. Heiser, III, Swope, Heiser & McQuaide,* for appellees.

OPINION BY JUDGE CRAIG, April 2, 1984:

Timberline Recreational Enterprises, Inc., Donald and Martha Shoemaker, and Stanley Wolf, owners of campgrounds,[1] appeal from an order by President Judge SPICER of the Court of Common Pleas of Adams County who declared that section 2(3) of the Local Tax Enabling Act[2] does not prohibit Highland Township and Gettysburg Area School District from imposing an admissions tax on campgrounds.

---

[1] The campground owners typically charge a fee for offering the public temporary use of (1) an assigned space for placement of a trailer, recreational or other vehicle and (2) associated equipment, appurtenances, and facilities for overnight camping.

[2] Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §6902-(3).

In this case of first impression, we must decide if the trial court committed an error of law by holding that section 2(3) poses no bar to the imposition of the township's admissions tax where, as here, the campground owners did not allege that the Commonwealth also imposes a tax on campground admissions. *Ryan v. City of Philadelphia*, 77 Pa. Commonwealth Ct. 283, 465 A.2d 1092 (1983) (scope of review in declaratory relief cases limited to determining if trial court abused its discretion or committed an error of law).

Section 2(3) provides, in pertinent part:

> The duly constituted authorities of the following political subdivisions . . . may . . . levy . . . such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions, . . . Such local authorities shall not have authority by virtue of this act:
>
> . . . .
>
> (3) Except on sales of admission to places of amusement or on sales or other transfers of title or possession of propriety, to levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a State tax; and for the purposes of this clause, real property rented for camping purposes shall not be considered a place of amusement.

Effective January 1, 1979, Highland Township and the Gettysburg Area School District passed almost identical legislation "IMPOSING, ASSESSING, LEVYING AND COLLECTION OF A TAX . . . UPON ADMISSIONS TO ANY PLACE OR ACTIVITY" within their boundaries. These local measures

do not define "place" but define "activity" as "all manner and form of entertainment, amusement, recreation, education, exhibition, or sport . . . ."[3]

The campground owners filed a complaint in two counts for declaratory judgment. In the first, they alleged that section 2(3) divests the taxing bodies of authority to collect the tax. In the second, Timberline stated that it alone charges a $1.00 admissions and $9.00 storage, utility, and placement fee; if subject to the ordinance, Timberline averred that it was responsible for collecting tax only on admissions. The taxing bodies filed demurrers; President Judge SPICER sustained the demurrers to count one, and the campground owners have appealed the dismissal of that count.

The predecessor of the current enabling act, the "Tax Anything Act" of 1947,[4] extensively changed the law by permitting local governments to tax anything but that forbidden by statute. *See F. J. Busse Co. v. Pittsburgh,* 443 Pa. 349, 279 A.2d 14, 16 (1971). The 1965 act, a substantial reenactment of the "Tax Anything Act," provides for a similar grant of authority. *Id.*

---

[3] They further define "activities" as "including but not limited to theatrical performances, lectures, motion picture exhibitions, historical exhibitions, and/or displays, swimming or bathing pools, either natural or man made, amusement parks, museums, golf courses, stadia, circus, carnivals, fair grounds, athletic events, dances, musicals or concerts, and all other forms and manner of sport, recreation, past time, diversion or edification, provided, however, that activities shall not include any form or manner of entertainment, amusement or instruction, the proceeds of which after the payment of reasonable expenses inure exclusively to the benefit of any nonprofit religious, educational or charitable institution, society or organization."

[4] Act of June 25, 1947, P.L. 1145, *as amended, formerly* 53 P.S. §6851 *et seq.*

A political subdivision's power to tax emanates exclusively from section 2, *id.*, which generally states that local authorities may tax persons, transactions, occupations, privileges, subjects, and personal property. The power to tax admissions, therefore, must emanate from that same grant of authority, specifically, from the language governing transactions and privileges. *Cf. Plymouth Lanes, Inc. v. Plymouth Township,* 415 Pa. 206, 210-11, 202 A.2d 811, 813 (1964) (tax on sale of admission to bowling alley is a tax on the privilege of engaging in the amusement and not a tax on use of the property in the place of amusement); *Cambria Township School District v. Cambria County Legion Recreation Association,* 201 Pa. Superior Ct. 163, 173, 192 A.2d 149, 154 (1963) (tax on sale of admissions to fairgrounds is tax on transaction or privilege, whether it is place of amusement or not).

The General Assembly then carved out certain exclusions from the broad grant of power in section 2. *Busse,* 443 Pa. at 354, 279 A.2d at 16. The exclusion at issue here, subsection (3), prohibits a political subdivision from imposing a tax "on the privilege of employing . . . tangible property . . . subject to State tax," *i.e.,* a prohibition against double taxation.

The General Assembly, however, also created two exceptions to the double taxation exclusion, one of which affects "sales of admission to places of amusement."[5] By referring only to places of amusement, the General Assembly, by implication, must have intended to create a distinction between sales of admission to those places and sales of admission to places other than amusements. *See* section 1924 of the Statu-

---

[5] The other exception refers to "sales or other transfers of title or possession of property . . . ."

tory Construction Act of 1972, 1 Pa. C. S. §1924 (exception expressed in a statute shall be construed to exclude all others).

Bearing in mind that the General Assembly created subsection (3) to delineate the bounds of a political subdivision's authority to double tax, we read the relevant exception as follows:

1. A local authority may not impose a tax on the sale of admissions to a place of non-amusement when the state has imposed an admission tax on the same subject matter;

2. A local authority, however, may impose a tax on the sale of admissions to a place of amusement even when the state has done so.

In other words, the exception to subsection (3) at issue here permits double taxation only on sales of admission to places of amusement.

In 1967, the General Assembly amended subsection 3 to state that "for purposes of this clause, real property rented for camping purposes shall not be considered a place of amusement."[6] Clearly, "this clause" relates to subsection (3).

Because "real property rented for camping purposes" is not a "place of amusement," campgrounds do not fall under the specific amusement exception language of subsection (3). Thus, a local authority may not impose a tax on the sale of admissions to a campground when the state has done so. As President Judge SPICER noted in his well-reasoned opinion, however, the campground owners have not alleged that the state currently taxes campgrounds and we have found no statutory authority to suggest that it does. Therefore the trial court properly concluded that subsection (3) does not apply to the facts of this dispute

---

[6] Act of December 21, 1967, P.L. 878.

and does not prohibit the township from imposing its admissions tax on campgrounds, which are "places" under the ordinance.

The campground owners contend that, in response to *Plymouth Lanes,* and *Fierro v. City of Williamsport,* 384 Pa. 568, 120 A.2d 889 (1956), upholding the authority of municipalities to impose taxes on the sale of admissions to amusements,[7] the General Assembly amended subsection (3) to shield campgrounds from admissions taxes. That argument, however, disregards the exclusionary purpose of the subsection—

---

[7] In *Plymouth Lanes,* a bowling alley proprietor claimed that Plymouth Township could not impose an admissions tax on his operations under what later became the Local Tax Enabling Act's pre-1967 version of subsection (3), because he did not charge an admissions fee to his place of amusement and because the state already taxed his bowling equipment under a sale and use tax. Evidently, the proprietor premised his argument on the same assumption adopted by the campground owners here, *i.e.,* that the power to tax admissions emanates from subsection (3). The Supreme Court did not directly address this question.

Rather, the court held that subsection (3)'s double taxation limitation did not prevent the township from imposing an admissions tax, because the subject matter of the state and local tax was not identical; the local ordinance taxed the privilege of engaging in the amusement and fell upon the patron, while the state tax fell upon the proprietor's use of equipment. *See also Clearview Bowling Center, Inc. v. Borough of Hanover,* 430 Pa. 579, 244 A.2d 20 (1968) ; *Board of Commissioners of Swatara Township v. Automatic Bowling Centre, Inc.,* 419 Pa. 482, 214 A.2d 725 (1965.).

In *Fierro,* the Supreme Court upheld an ordinance which taxed the use of jukeboxes. By noting that "the tax was not upon a 'place of amusement' but upon a privilege," the court apparently rejected the argument that, because the tax was not upon sales of admission to places of amusement, Williamsport could not tax jukeboxes. Again, by implication, the court thereby dismissed the notion that the power to tax admissions emanates from subsection (3). *Accord, Cambria Township,* 201 Pa. Superior Ct. at 165, 167, 192 A.2d at 150, 151 (court rejects argument that school district may only tax admissions if they are to places of amusement).

to divest political subdivisions of any general double-taxing authority. More significantly, it presumes that the language of the exception, "sales of admission to places of amusement," provides political subdivisions with an independent grant of authority to levy taxes. As we observed, however, the power to tax admissions emanates exclusively from the privilege and transactions language of section 2. We may not disregard the language of a statute under the pretext of pursuing its spirit. 1 Pa. C. S. §1921(b).

Accordingly, we affirm.[8]

### ORDER

Now, April 2, 1984, the order of the Common Pleas Court of Adams County, dated October 29, 1981, sustaining demurrers to Count 1 of the campground owners' complaint, No. 81-S-337, is affirmed.

---

[8] The campground owners also contend that the ordinance is invalid because it does not conform to the enabling act. Because they did not raise this issue in count one of their complaint, the campground owners have waived it on appeal.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. I read Section 2(3) of the Local Tax Enabling Act to provide, pertinently: that municipal subdivisions shall not have authority to tax the privilege of employing tangible property which is subject to State tax; except that they may tax the sale of admission to places of amusement although the places of amusement employ tangible property which is subject to State tax; provided, however, that real property rented for camping purposes shall not be considered a place of amusement. Q E D, municipal subdivisions may not impose a tax on sales of admissions to real property rented for camping purposes.

I do not believe that the Legislature would deal with so specialized an activity as the rental of real property for camping purposes for any reason other than to exempt it from tax as a place of amusement, especially as the last phrase of Section 2(3) which concerns camping was added by amendment some six years after the Local Tax Enabling Act was first enacted. Nor do I believe that the Legislature intended to create a distinction between a tax on sales of admissions to places of amusement, on the one hand, and on sales of admission to places of non-amusement, on the other; indeed, the only places of non-amusement the admissions to which are marketable which come to our mind are the facilities of transportation utilities, which are excluded from local taxation by Section 2(2) of the Act.